THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ENRICO LEVY, Defendant-Appellant.

First District (6th Division)   No. 1—86—2377

Opinion filed July 28, 1989.

Bruce Mosbacher, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Nancy Colletti, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE EGAN delivered the opinion of the court:

A jury convicted the defendant of attempted murder, armed violence and aggravated battery. He was sentenced to 24 years' imprisonment. No issue is made of the sufficiency of the evidence.

The defendant's only assignment of trial error involves proof of another offense. Before trial began, the defendant made a written motion *in limine* seeking to bar "[a]ny reference to criminal conduct of defendant including references to any drug selling or buying *** between defendant and witness Anthony Blue." During argument on the motion, the assistant State's Attorney told the court that the evidence would show that the defendant attempted to sell Blue some drugs, that Blue refused and that insulting words were exchanged that led to an altercation between him and the defendant. The court then ruled that it would permit the evidence. We judge that the State was arguing that it would offer the evidence to show a motive for the crime.

Anthony Blue testified that about 11 p.m. on July 18, 1985, he was standing in a vacant lot near 816 South Cicero Avenue in Chicago with his girlfriend, Tina Preston. The defendant asked if Blue wanted some marijuana, and Blue told him that he did not. The defendant had "a few words" with Tina Preston, and Blue began to argue with him. Blue asked the defendant "why he did approach her like that?" One thing led to another, and they then had a fistfight. Another man named "Cigar Man" broke up the fight. Blue and the defendant went their separate ways.

Blue was walking northbound on Cicero with Tina Preston when he was shot three times, once in the lower back and twice in the buttocks. He saw the defendant on a bicycle about five feet away. He had seen the defendant in the neighborhood occasionally for several years.

On re–cross-examination he was asked if the "altercation" was

"over dope" and he said it was over the way the defendant had approached Preston. "It wasn't over no dope." On redirect he said that his refusal to buy marijuana was not what the argument was about; the argument arose because the defendant had approached Tina in a way that he did not like and she did not like. He and the defendant then had an argument and ended up fighting. On further re-cross he said he did not remember telling Officer Stampnick that the defendant's attempt to sell him marijuana led to the fight.

Tina Preston testified that after she heard a gunshot she saw the defendant on a bicycle with a gun in his hand. Blue tried to shield her and there were three more shots. The defendant started to laugh and rode off on the bicycle. She also testified that before the shooting, a fight had occurred after the defendant asked Blue whether he wanted to buy some marijuana and Blue said that he did not. Then the defendant started saying things about her that Blue did not like, and they started fighting.

Officer Stampnick testified on direct examination only that she had arrested the defendant. The defendant's attorney then brought out that Blue and Preston told her that the argument with the defendant was over marijuana and never told her, as far as she could recall, that the argument was over the way the defendant had talked to Preston.

The defendant did not introduce any evidence.

In the written motion for a new trial and in argument on the motion, the defendant contended that the evidence of his attempt to sell Blue marijuana should not have been admitted. While his attorney made passing reference to the fact that there was a claim by the State that narcotics was the cause of the fight and the evidence established that the fight was caused by the defendant's insulting remarks about Preston, the inconsistencies between the State's representation to the judge and the evidence does not appear to be the basis of the motion or the argument in support of the motion.

The State responded to questions by the judge about the inconsistency between the reason for the fight as expressed by the State and the testimony of Blue and Preston. The judge rejected the State's argument that the evidence was part of the *res gestae*, saying that the doctrine of *res gestae* has not existed in Illinois for several decades. He concluded, however, that the prosecutor made a good-faith representation as to what the evidence would be, but he added that he would not have permitted the evidence to be introduced; he would have allowed the motion *in limine*. He denied the motion for a new trial, holding that the error was harmless beyond a reasonable doubt in view of all the evidence.

The judge's assessment of the evidence was correct. Contrary to the defendant's argument, the identification was not questionable. Both witnesses had known the defendant for a considerable period of time; and, as the judge pointed out, the fact that the defendant and Blue had had a fight five minutes before the shooting was a strong circumstance corroborating their identification.

■ We agree that the admission of the evidence did not warrant a new trial; but, we would go further. In our judgment the evidence was admissible as part of the *res gestae*, and we do not believe that the rule permitting proof of other crimes that constitute part of the *res gestae* is no longer the law of Illinois. We are aware that *res gestae* has been criticized by some textwriters insofar as its use as an exception to the hearsay rule is concerned. (See E. Cleary & M. Graham, Handbook of Illinois Evidence §803.2, at 549-50 (4th ed. 1984) (Cleary & Graham); E. Cleary, McCormick on Evidence §288, at 686-87 (2d ed. 1972).) But from our reading of Cleary & Graham we conclude that the authors were restricting their condemnation to the use of the term under the hearsay rule and not to its use as an exception to the rule barring proof of other crimes. This is evidenced by their distinguishing citation of *People v. Crocker* (1962), 25 Ill. 2d 52, 183 N.E.2d 161, in which the supreme court said that proof of a sexual assault other than that for which the defendant was on trial was "admissible as a part of the *res gestae*" and that its holding "appears to be in accord with the great weight of authority." (25 Ill. 2d at 55.) Acceptance of the rule has never been questioned in any reviewing court in Illinois to our knowledge. As recently as 1987, this court upheld admissibility of another crime on the ground that it constituted part of the *res gestae. People v. Demeron* (1987), 153 Ill. App. 3d 440, 505 N.E.2d 1222.

■ ■ We would also hold that the defendant has waived any objection on the ground of any variance between the testimony and what the State had represented to the court. At no time did the defendant raise any objection after Blue testified about the cause of the fight. He never renewed his motion, made no motion to strike the testimony, no motion for a mistrial and never called the variance to the attention of the judge. As a matter of fact, the defendant used the variance to his advantage. By that variance between the testimony of Blue and Preston and that of Officer Stampnick, the defendant was able to show some impeachment, since as it was, and he argued that point before the jury. In that vein, we refer to the defendant's additional argument that the State improperly referred to this evidence in its closing argument. The State's closing argument, to which no objection was made, was an appropriate response to the argument of the defendant's attor-

ney, who referred to the alleged contradictory statements made by Preston and Blue. We conclude that the court did not err in denying the motion for a new trial.

The defendant's only other contention is that the trial court erred in failing to appoint new counsel to present his post-trial motion in which he alleged ineffective assistance of counsel.

The assistant public defender filed a motion for a new trial on August 5, 1986. On August 14, when he appeared with the defendant for a hearing on the motion, he also asked leave to file a motion to withdraw. It was brought in the name of the defendant, who swore to its contents, and had been prepared by the assistant public defender who had tried the case. In the motion, the defendant stated that he had several discussions with his counsel regarding ineffective assistance based on the following factors:

"A) Counsel had inadequate time to properly prepare the instant case for trial;

B) The cross-examination of Tina Preston was ineffective assistance of counsel in that it was unnecessarily narrow in scope and content and failed to fully bring before the jury issues affecting her believability;

C) Counsel's failure to interview defense witnesses and [State] witnesses adequately and in sufficient time before trial to do further investigation was ineffective assistance of counsel."

After a hearing in which the judge questioned the defendant and the assistant public defender, he denied the motion to withdraw. The assistant public defender then presented a four-page motion for a new trial, which was also denied. The defendant contends that the court erred in denying the motion to withdraw and asks that we grant him a new hearing on his post-trial motion at which he would be represented by counsel other than his trial attorney. We assume that the post-trial motion would be amended to include ineffective assistance of counsel; and the new attorney would investigate and argue that claim.

Post-trial motions alleging incompetence of counsel are seemingly becoming fashionable (see *People v. Miles* (1988), 176 Ill. App. 3d 758, 531 N.E.2d 891 (and cases cited therein)) and constitute still another rung in the appellate ladder that the bar and the courts must scale. Some earlier decisions appear to indicate that the mere allegation of trial ineffectiveness in a post-trial motion triggered the requirement that new counsel be appointed to investigate the allegation. (See, *e.g., People v. Fields* (1980), 88 Ill. App. 3d 821, 410 N.E.2d 1178.) But later cases have disabused us of such a notion. (*People v. Davis* (1986),

151 Ill. App. 3d 435, 502 N.E.2d 780; *People v. Mallette* (1985), 131 Ill. App. 3d 67, 475 N.E.2d 237.) A commonsense and realistic approach to the problem was provided in *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466, and *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610. In *Jackson*, the court expanded on *Johnson*, affirmed the denial of the motion to withdraw and approved the procedure followed by the trial judge, who, coincidentally, is the trial judge in this case. The court held that where ineffective assistance of counsel is claimed in a post-trial motion, the trial judge may question the allegedly ineffective counsel "to determine whether the facts underlying defendant's claim have potential merit and to refuse to appoint new counsel if defendant's claim is spurious or revolves simply around a matter of trial strategy or tactics." 131 Ill. App. 3d at 139.

There is certain language of *Jackson*, however, we believe should be viewed with caution: "[S]ome interchange between the court and the defendant's attorney *must* take place. Such an interchange is *necessary* to avoid potential abuses \*\*\*." (Emphasis added.) (131 Ill. App. 3d at 139.) If the *Jackson* court meant that in all cases the trial judge is required to examine counsel, we must express disagreement as, we conclude, this court did in *People v. Miles* (1988), 176 Ill. App. 3d 758, 531 N.E.2d 891. There may be cases where the allegations of the motion itself are so obviously baseless or conjectural to the trial judge, who, having observed all of the proceedings, is in the best position to determine the question, that any further inquiry is unnecessary.

But we do not believe, as apparently the *Miles* court did, that procedures to be followed in cases involving appointed counsel should differ from procedures in cases involving retained counsel. (*Cf. People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.) Nor do we see anything in the procedure followed in *Jackson* as an abridgment of the right of a defendant to choose his own counsel. The claim in a post-trial motion that trial counsel was incompetent is, implicitly at least, an expression of a desire that the lawyer-client relationship be terminated, whether the lawyer is retained or appointed. If the judge determines that there may be some merit in the claim of incompetence on the part of retained counsel, the defendant, of course, should be given the opportunity to retain other counsel to pursue the claim.

■ In any event, this case involves appointed counsel, and the procedure followed was proper: the court considered the allegations of the motion, and he questioned the defendant's attorney and the defendant.

The propriety of the procedure being accepted, the issue becomes the propriety of the judge's determination that ineffective assistance

had not been established to the point that appointment of separate counsel was required.

■ The defendant was no stranger to the criminal court, or to defense attorneys, having an extensive record beginning in 1971 which contained three felony convictions. His claim that his counsel had inadequate time to prepare for trial rings hollow, since the record shows that the defendant was demanding trial. Indeed, he filed his own three-page motion for discharge on the day of trial on the ground he had not been brought to trial within 120 days.

We do not read the assistant public defender's remarks as an admission that he was ineffective, as the defendant argues, but, rather, a statement that he was ineffective in the defendant's view. He also told the judge that the defendant's complaints were made after the trial and that he could not remember whether they were mentioned during the trial. He had been an assistant public defender for several years, and it was his practice to give the defendant an opportunity during trial to call any claim of his ineffectiveness to the attention of the court. He also said that he had attempted to locate witnesses without success.

The defendant told the judge in response to his questions that Calvin Richmond should have been interviewed. Later, he said a man named "Sugarman" (Cigar Man?) should have been interviewed, as well as Tina Preston and Blue.

The court noted that the case was a "simple" one, that neither Richmond nor Sugarman was a witness to the shooting, that the assistant public defenders had presented a vigorous defense and that their cross-examination of Preston and Blue was "sufficient and effective." He also noted that Preston and Blue were under no obligation to talk to the defendant's attorney and there was no indication that a pretrial interview would have benefitted the defendant. He concluded that the defendant had an opportunity to call the matters to his attention before or during the trial and that his belated claim was "sour grapes."

We agree with the procedure followed and the judge's conclusions. The entire record displays more than ample justification for the denial of the motion to withdraw.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

QUINLAN and LaPORTA, JJ., concur.