THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HENRY LEVESQUE, Defendant-Appellant.

First District (2nd Division)    No. 1—91—3482

Opinion filed November 9, 1993.

Michael J. Pelletier and Anna Ahronheim, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Ann Benedek, and David Meyerson, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Henry Levesque was charged by information with one count of robbery (Ill. Rev. Stat. 1989, ch. 39, par. 18—1(a)) for taking, by the use of force, money and a portable radio from Vernon Thigpen in the early morning of July 25, 1990. The following evidence was adduced at defendant's bench trial. Thigpen testified that at approximately 3:30 or 3:45 a.m. on July 25, 1990, he was in a motel

room with his girl friend watching television when an unknown individual opened the locked door using a key. The individual apologized for the intrusion and explained that he had entered the wrong room. Thigpen stated that although the room was illuminated only by the light emanating from the television set, he was able to discern the individual's appearance, and he informed the court that the person who opened the door was defendant, whom he identified for the record.

About an hour later, Thigpen was awakened by a pounding on his door and shouts, purporting to be made by the police, commanding him to open the door. He went to the bathroom to put on his shorts, and in so doing, turned on the bathroom lights. When he exited the bathroom, he observed defendant in the other room along with another man. Defendant grabbed him and threw him against the bed, where he attempted to pin him, and their proximity afforded Thigpen a clear view of defendant's face. While defendant tried to hold him, his accomplice took Thigpen's gym bag where he had stored his money and a cassette radio. Thigpen broke free of defendant and pursued the other man, who had fled from the room. After the two rounded a corner of the motel, the accomplice stopped and told Thigpen that he would shoot him if he continued his pursuit; therefore, Thigpen gave up the chase. When he returned to his room, he came upon defendant once again and observed him steal his sweatpants and watch.

The next day Thigpen was at the liquor store where he worked when defendant came in and bought a candy bar. He was wearing the same clothes, namely a dark blue jacket and brown pants, which he had worn while committing the robbery. Thigpen recalled telling his uncle, with whom he worked at the store, immediately after defendant had left there that he was the person who had perpetrated the robbery the night before. His uncle suggested that he advise the police and informed him that a squadrol was parked across the street. The officers, after speaking with Thigpen and learning of the crime, went to defendant, questioned him, and then took him into custody. This testimony was substantially corroborated by the arresting officer, Edward Clemens, who testified that Thigpen told him and his partner that he had been robbed the night before, and accused defendant of being the perpetrator. While defendant was in the custody of the officers, Thigpen once again identified him as the robber. When he was arrested defendant was wearing a blue jacket and brown pants.

On cross-examination, defense counsel questioned Thigpen concerning the amount of money he had lost in the robbery. The po-

lice report of the robbery indicated that Thigpen carried $190, while at trial he had attested to losing $390. Thigpen did not recall reporting to police that the robbers took only $190. He also denied that he and his girl friend were drinking any alcohol, smoking any marijuana or consuming any other narcotic. Thigpen stated that he and his girl friend spent the morning watching television. After Thigpen testified that he was approximately 5 feet 9 inches tall and that he weighed only 160 pounds, defense counsel questioned him as to how he would be able to toss defendant off him when defendant was four or five inches taller than he and outweighed him by at least 20 pounds. Thigpen did not explain but merely reasserted that he tossed him off.

Defendant then filed a *pro se* motion to dismiss which was denied and his counsel orally moved for a "directed finding" (whatever that means in a bench trial) in his favor, which the court also denied. Defendant presented the testimony of Christine Hill, who stated that she and defendant were on a date on July 25, 1990, and that after various activities, she drove him to his brother's home on the north side of the city, leaving him at approximately 1 or 1:30 a.m. Although she did not name the exact street to which she drove him, she recalled that the location was around Wilson Avenue or Lawrence Avenue.

On cross-examination Hill disclosed that defendant had contacted her from jail and had attempted to coerce her into testifying that the two were together until 6:45 or 7:30 a.m. on July 25, 1990, and that if she did not testify as instructed, he would harm her. On redirect, Hill admitted that she had corresponded with defendant while he was incarcerated but denied that she wrote to him after he threatened her. Defense counsel also elicited from her that, in addition to threatening her with regard to her testimony, defendant also tried to extort funds from her with which he would retain a private attorney. Finally, Hill related that she had advised defense counsel that defendant had threatened her and she also informed him that she had reported the threat to the State's Attorney's office and the police.

After the court found defendant guilty, he filed a *pro se* motion charging his trial counsel with ineffective representation generally, and among his specific allegations, he accused counsel of having lost cards and letters sent to him in prison by Hill and which he had given to counsel. He also maintained that counsel neglected his case and did not allow him to participate. Defense counsel filed a post-trial motion as well. The hearing on these motions and on the sentencing of defendant was held on October 9, 1991, but the proceedings were either not transcribed or the transcript was lost. In February 1993, when the absence of the transcript was discovered,

the parties met to reconstruct the record. Defendant was represented there, as well as at the actual hearing, by Luther Hicks, the supervisor of Assistant Public Defender Ashton Barbour, who had served as defendant's trial counsel. Hicks had appeared because defendant had filed a complaint with the Attorney Registration and Disciplinary Commission, charging Barbour with incompetence. At the reconstruction meeting, Hicks stated that he had no independent recollection of having argued any of the points raised in the *pro se* motion, and he doubted that he would have done so. The judge did not recall if any of the points in defendant's motion had been raised before him and he stated that if the motion had been brought to his attention, he would have dismissed it. Defendant was sentenced to seven years' imprisonment, after which he filed a timely notice of appeal.

I

Defendant first argues that his conviction must be reversed and the action remanded for a new trial because the representation he received from his court-appointed attorney, an assistant public defender, was constitutionally inadequate. In *People v. Caballero* (1989), 126 Ill. 2d 248, 533 N.E.2d 1089, the supreme court explained that a determination of effective assistance consists of two separate inquiries. To put forth a cognizable inadequate representation claim, defendant must prove:

"(1) that his counsel made an error so serious, and his performance was so deficient, that he was not functioning as the 'counsel' guaranteed the defendant by the sixth amendment to the United States Constitution, and (2) that these deficiencies so prejudiced the defendant as to deprive him of a fair trial, a trial whose result is reliable." (*Caballero*, 126 Ill. 2d at 259-60, 533 N.E.2d at 1091, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064.)

With regard to the first prong, defendant fails to satisfy his burden unless the record reflects that his attorney did not render " 'reasonably effective assistance' " based on a standard of "objective reasonableness under 'prevailing professional norms,' " and in so doing defendant must overcome the "strong presumption that the challenged action or lack of action might be the product of 'sound trial strategy.' " *Caballero*, 126 Ill. 2d at 260, 533 N.E.2d at 1091, citing *Strickland*, 466 U.S. at 687-89, 80 L. Ed. 2d at 693-95, 104 S. Ct. at 2064-65.

A defendant establishes actual prejudice under the second aspect of *Strickland* by convincing that a reasonable probability exists that had counsel not erred, the trier of fact would not have found him

guilty beyond a reasonable doubt. (*Caballero*, 126 Ill. 2d at 260, 533 N.E.2d at 1092, citing *Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2069.) A reasonable probability is one that is sufficient to undermine confidence in the outcome of defendant's trial after considering the evidence presented to the jury in its totality. (*Strickland*, 466 U.S. at 695, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068-69.) A reviewing court must give great deference to the performance of counsel and resist the temptation to second-guess a particular decision or omission. *Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065-66.

In the case at bar, defendant specifically points to counsel's decision to have Hill testify as constituting ineffective assistance, arguing that her testimony not only accrued no benefit to him, but, in fact, did a disservice to his case. Hill testified that on the day of the robbery, she had driven defendant, who was her boyfriend, to the north side of Chicago, dropping him off around 1 a.m. Therefore, since Thigpen first saw defendant in the motel room on the City's south side at approximately 3:30 a.m., this did not present a complete defense to the crime as he could have easily taken public transportation from the north side to the south side and have arrived there in ample time to plan and to carry out the robbery. But defendant does not suggest that the presentation of this incomplete defense alone constituted his attorney's incompetence. Rather, he maintains that counsel was ineffective because he put Hill on the stand even though he knew that she had informed both the police and the State's Attorney's office that defendant had threatened her that he would harm either her or her family if she did not testify that she was with defendant the entire night and morning of the crime until 6:45 or 7:30 a.m.

The State argues that since the decision whether to call a witness is within the province of counsel, the alleged blunder on the part of defendant's attorney here constitutes unreviewable trial strategy. However, not every decision of counsel, no matter how misguided, may be swept under the boundless rug of "trial strategy," and thereby become sacrosanct. Where the decision to call or not to call a particular witness rested on a misapprehension of the law, this court is not precluded from determining that counsel was ineffective. See *People v. Wright* (1986), 111 Ill. 2d 18, 488 N.E.2d 973 (holding that counsel's failure to call witnesses who would further the defense of intoxication could not be dismissed under the rubric of trial strategy, but rather would support a claim of ineffective assistance); *People v. Lee* (1989), 185 Ill. App. 3d 420, 437, 541 N.E.2d 747, 757 (recognizing that a distinction between trial tactics and ignorance of the law is to be

made by reviewing courts when analyzing ineffective assistance claims).

Although it is hornbook law that an attempt to intimidate a witness in order to garner favorable testimony is relevant and admissible in a criminal case, and although it is equally well appreciated that such evidence is highly probative of a defendant's consciousness of guilt (see M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.3, at 574-75 (5th ed. 1990); 2 J. Strong, McCormick on Evidence § 265, at 189-92 (4th ed. 1992); see also *People v. Mullen* (1990), 141 Ill. 2d 394, 566 N.E.2d 222; *People v. Gambony* (1948), 402 Ill. 74, 83 N.E.2d 321), defense counsel nevertheless exhibited a complete unfamiliarity with this elemental evidentiary principle throughout the proceedings in the circuit court. For instance, in his motion to strike that portion of Hill's testimony which disclosed that defendant tried to intimidate her into stating that the two were together the entire morning of the crime, counsel argued that such evidence had "no bearing on whether or not [defendant] committed a robbery at 90-something and Cottage Grove on the evening in question." Later, during summation to the court, counsel incessantly maintained that no rule of evidence existed which would allow the State to elicit from a defense witness that she had been threatened by defendant to give favorable testimony. Finally, in the motion for a new trial which was prepared by trial counsel, he argued that the court violated defendant's right to due process by allowing the introduction of evidence showing attempted witness intimidation, although there exists no authority anywhere that such evidence, if admissible, implicates due process concerns.

■ In view of the fact that Hill's direct testimony did not give rise to a complete defense and that any benefit which defendant may have gained from her partial alibi was immediately lost when she confessed on cross-examination that he attempted to persuade her to perjure herself, it would not be too much to expect that a reasonably competent attorney, that is, one who was aware that an attempt to intimidate a witness was admissible in a criminal trial, would not have put her on the stand. Defendant has therefore satisfied the first aspect of *Strickland* in that the representation he received fell below a level of objectively reasonable legal competence. However, he fails to meet its second prong, for he does not convince that he suffered actual prejudice by his counsel's inadequacies. As noted above, prejudice is established by demonstrating that there was a substantial likelihood that but for counsel's errors and omissions, the outcome of defendant's trial would have been different. *People v. Dean* (1992), 226 Ill. App. 3d 465, 589 N.E.2d 888, *appeal denied* (1992), 145 Ill. 2d 638, 596 N.E.2d 632.

An example of the type of proof required to meet the high threshold of actual prejudice created by *Strickland* can be seen in *People v. Salgado* (1990), 200 Ill. App. 3d 550, 558 N.E.2d 271. There, in a bench trial, counsel was found to be professionally deficient for eliciting from defendant during his direct examination an admission that he committed the crime. But this alone did not establish actual prejudice. Instead, it was the specific statement of the trial judge that he would have acquitted the defendant of the crime to which he confessed on the stand had he not made that admission.

In the case at bar, there is no such stark evidence that the fact finder's determination of guilt was dependent on the evidence which resulted from defense counsel's incompetence. The victim squarely and repeatedly identified defendant as the individual who had twice broken into his motel room and participated in the taking of his money and radio. The identification as well as the other testimony given by the victim, standing alone, provided sufficient evidence to convict defendant of the crime of robbery. There is nothing in the record to indicate that the court disbelieved the victim's identification of defendant, nor is there anything therein which would have compelled the court to so disregard his testimony. Accordingly, we cannot say that defendant's conviction depended on Hill's testimony. At worst, her testimony may possibly have had some effect on the court's finding of guilt. However, under *Strickland* the mere possibility of prejudice arising from the errors of counsel is not enough to warrant the reversal of a conviction and a retrial. Therefore, the representation defendant received was not so deficient that it may be fairly characterized as having deprived him of a fair trial with a reliable outcome.

## II

Defendant's next argument concerns the lack of consideration paid by the trial court to the substance of his *pro se* motion for a new trial. The State initially responds that defendant has waived any issues raised in his post-trial motion since he filed it more than 30 days after his conviction. This argument, however, ignores the fact that defendant was ready and able to file the motion within the requisite 30-day period, but was persuaded by the court to discuss his complaints with his counsel before filing the motion. Defendant acquiesced in the court's request and, as a result, refrained from filing within the statutory period. After acting as the court had suggested, and yet being unsatisfied with the conversation, defendant filed the motion at his next appearance in circuit court, which occurred 36 days after his conviction.

■ In *People v. Orange* (1988), 121 Ill. 2d 364, 521 N.E.2d 69, our supreme court refused to find that a defendant had waived assignments of error even though he failed to include them in his post-trial motion. There, the trial court had dissuaded a defendant who had registered dissatisfaction with the incompleteness of the counsel-prepared post-trial motion from filing his own supplemental *pro se* motion. The court informed the defendant that his specific objections had been preserved for appeal solely on the strength of counsel's contemporaneous objection. The trial judge also indicated that the defendant could have an additional week to prepare the motion if he still wanted to file it, but no supplemental motion was ever filed. The supreme court surmised that the reason the defendant never filed the supplemental post-trial motion was due to his reasonable reliance on the assurances of the circuit court that any errors he could claim were preserved without the motion. Likewise here, no waiver could possibly be found had the court allowed defendant to file the motion when he first attempted to tender it. Consequently, it would constitute a grave injustice for us to hold that defendant, by following the wishes of the circuit court, has waived the issues raised in his post-trial motion. See also *People v. Mack* (1989), 128 Ill. 2d 231, 244, 538 N.E.2d 1107, 1113 (declining to find issues asserted in an oral as opposed to a written post-trial motion waived after the trial court erroneously informed counsel that the oral motion was sufficient, reasoning that "[d]efense counsel cannot be faulted for acting in compliance with the judge's instructions").

■ Proceeding to the merits of defendant's contention, he urges remandment of the action to the circuit court because it made no inquiry of his trial counsel regarding his inadequacies at trial or the lost evidence as alleged in his *pro se* motion. In *People v. Nitz* (1991), 143 Ill. 2d 82, 572 N.E.2d 895, our supreme court held that where a defendant asserts that his counsel was ineffective, the court must explore, at least to some minimal degree, the substance of that motion before it may be dismissed. Here in the bystander's report, both the counsel who represented defendant at the post-trial hearing and the trial judge who presided over it admitted that no discussions at all were had regarding the allegations made in defendant's motion. In fact, while reconstructing the post-trial hearing, defense counsel stated that he was "quite certain that [he] did not argue the points raised in [defendant's *pro se* motion], but rather that we just requested that the Court consider [it] and rule on it accordingly." The court stated that it had no recollection as to whether the points in defendant's motion were pursued at the hearing and that if the motion were before the court, it would have dismissed it as having no

merit. This constitutes a clear violation of *Nitz*, which expressly held that where the defendant charges his counsel with incompetence, " 'the trial court should examine the factual matters underlying the defendant's claim[.] \*\*\*.' [Citations.]" (*Nitz*, 143 Ill. 2d at 134, 572 N.E.2d at 919 (Alteration in the original.)[1] ) Therefore, under *Nitz* this action must be remanded for an exploration of defendant's claim that his counsel lost potentially exculpatory evidence, as well as for consideration of the other points raised in his motion.

### III

Defendant lastly argues that because he filed a complaint with the Attorney Registration and Disciplinary Commission (ARDC) which accused his counsel of sanctionable incompetence, the trial court erred in allowing him to be represented at the hearing on the post-trial motions by the supervisor of the assistant public defender whom he had characterized as incompetent. The State's response to defendant's argument is to urge incorrectly, we believe, that he has waived this issue because the record does not disclose that at the actual hearing on the post-trial motion the court was apprised of the

---

[1]The State argues that the limited inquiry need not be made in every case where defendant alleges incompetence of counsel, citing *People v. Levy* (1989), 186 Ill. App. 3d 842, 542 N.E.2d 930, *appeal denied* (1990), 129 Ill. 2d 569, 550 N.E.2d 562. In *Levy*, the court attempted to limit the rule announced in *People v. Jackson* (1985), 131 Ill. App. 3d 128, 138, 474 N.E.2d 466, which had held that when the defendant raises incompetence of trial counsel:

" '[S]ome interchange between the court and the defendant's attorney *must* take place. Such an interchange is *necessary* to avoid potential abuses \*\*\*.' " (Alteration added, omission and emphasis in original.) (*Levy*, 186 Ill. App. 3d at 847, 542 N.E.2d at 934, quoting *Jackson*, 131 Ill. App. 3d at 138.)

The *Levy* court maintained that the mandatory aspect of *Jackson* should be ignored and instead the incompetence inquiry should not be conducted if the motion was obviously baseless or was mere conjecture. However, in the case at bar defendant's allegation that his counsel lost potentially exculpatory evidence with which defendant had entrusted him is not so "obviously baseless" that it may dismissed out of hand. Moreover, the short cut advocated by *Levy* was not mentioned in *Nitz*, which appeared to accept *Jackson*'s approach in its entirety, and which would include a mandatory inquiry without regard to the apparent strength of the defendant's motion. Accordingly, the continuing vitality of the contrary position advanced in *Levy* may properly be considered to be doubtful, and the State's absolute reliance on that decision is therefore untenable.

complaint registered with the ARDC. However, at the reconstruction of the post-trial hearing, Hicks, who was counsel for defendant, explained that he had appeared in place of trial counsel because "the trial attorney who did the trial, Ashton Barbour, had received an ARDC complaint filed against him by our client, Mr. Levesque." It is reasonably inferable that if Hicks had the presence of mind a year and two months after the event to recall that he had appeared for defendant because of the filing of an ARDC complaint, it is entirely likely that he actually informed the court of the complaint on the day of the hearing. Thus, defendant has not waived this issue.

Relying on *People v. Cano* (1991), 220 Ill. App. 3d 725, 581 N.E.2d 236, defendant maintains that his trial counsel's supervisor, who substituted for trial counsel at the post-trial motion hearing, should be deemed to have had a *per se* conflict because he could not set aside the natural allegiance he would have to an underling, and thus could not effectively advocate in favor of defendant's position that his trial counsel was incompetent. In *Cano*, the court held:

> "Effective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations. [Citation.] Defendant was not given total allegiance here as there were pressures put on [trial counsel and his supervisor] to protect their personal interest, which was in direct conflict with defendant's interest. Therefore, we find that a *per se* conflict existed ***." (*Cano*, 220 Ill. App. 3d at 731-32, 581 N.E.2d at 240.)

According to defendant, since the *per se* conflict identified in *Cano* was present in this case as well, the circuit court erred in allowing defendant to be represented by Hicks at the post-trial motion and thus the action must be remanded for a new hearing on that motion.

However, because we believe that the holding of *Cano* is worded too broadly, that case will not be followed by this court. First, the decision took no account of the unwavering holding of every other opinion which has addressed this issue that "a *per se* conflict of interest *** is *not* created simply because the defendant claims that his representation was ineffective or because, as was done here, he files a complaint with the ARDC alleging the same." (Emphasis in original.) (*People v. Jackson* (1993), 243 Ill. App. 3d 1026, 1033, 614 N.E.2d 94, 99, citing *Nitz*, 143 Ill. 2d at 134, 572 N.E.2d at 919; *People v. Carroll* (1992), 260 Ill. App. 3d 319, 338-39; *Dean*, 226 Ill. App. 3d at 467, 589 N.E.2d at 890; *Jackson*, 131 Ill. App. 3d at 138, 474 N.E.2d at 474.) That being the case, it is indisputable that no *per se* conflict exists between a defendant and the supervisor of the attorney alleged to be professionally deficient.

*(People v. Claybourn* (1991), 221 Ill. App. 3d 1071, 1080, 582 N.E.2d 1347 ("There is no *per se* conflict of interest when one public defender must argue the ineffective assistance of counsel of another public defender[ ]"); see also *People v. Banks* (1987), 121 Ill. 2d 36, 520 N.E.2d 617.) Moreover, the court in *Cano* did not need to make so far-reaching a holding since the succeeding public defender in *Cano* admitted before the court that he could not put aside his allegiance to his employee and he admitted that he could not argue that the defender was inept. Thus, *Cano* was incorrect to state that a *per se* conflict exists whenever a defendant alleges that his court-appointed trial attorney was incompetent, and it was also in error when it held that this conflict extends to every other member of the public defender's office.

■ But our refusal to follow the decision in *Cano* alone does not dispose of this issue because defendant also maintains that the circuit court erred in failing to make some inquiry of Hicks concerning whether he could overcome his natural loyalty to an attorney under his supervision, and thus be able to argue effectively his subordinate's maladroit performance at defendant's trial. In *Banks,* our supreme court held that such an inquiry was necessary in order to ensure that defendant receives conflict-free advocacy addressing his trial attorney's abilities. That inquiry was not made in the instant case and, as a result, it must be remanded to the circuit court in order to gain Hicks' assurances or the guarantee of whomever may succeed him on remand that he or she can be loyal to defendant's interests.

This action is therefore remanded to the circuit court with directions to conduct a hearing in order to consider the complaints raised in defendant's *pro se* post-trial motion.

Remanded with instructions.

HARTMAN and DiVITO, JJ., concur.