THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. STEVEN STEWARD, Defendant-Appellant.

First District (2nd Division)   No. 1—96—3680

Opinion filed March 31, 1998.

Rita A. Fry, Public Defender, of Chicago (Julie A. Hull, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Christine L. Kornak and Deborah Brown Lee, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Defendant, Steven Steward, was charged with one count of attempted first degree murder (720 ILCS 5/8—4, 9—1 (West 1992)), five counts of attempted aggravated criminal sexual assault (720 ILCS 5/8—4, 12—14(a)(4) (West 1992)), six counts of aggravated kidnapping (720 ILCS 5/10—2(a)(3) (West 1992)), one count of attempted criminal sexual assault (720 ILCS 5/8—4, 12—13(a)(1) (West 1992)), two counts of kidnapping (720 ILCS 5/10—1(a)(1) (West 1992)), three counts of aggravated battery (720 ILCS 5/12—4(a) (West 1992)), and one count of unlawful restraint (720 ILCS 5/10—3(a) (West 1992)). Following a jury trial, he was convicted of one count of attempted aggravated criminal sexual assault (720 ILCS 5/8—4, 12—14(a)(4) (West 1992)) and one count of aggravated battery (720 ILCS 5/12—4(a) (West 1992)). Defendant filed a *pro se* motion for a new trial and his posttrial appointed counsel filed a supplemental motion for a new trial, which the trial court denied. He was sentenced to an extended 25-year prison term for attempted aggravated criminal sexual assault and a 5-year prison term for aggravated battery, to

run concurrently. Defendant now appeals the judgment of conviction. This court has jurisdiction pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 603 (134 Ill. 2d R. 603).

For the reasons that follow, we affirm.

## FACTUAL HISTORY

The trial court heard two pretrial motions. First, defendant sought to impeach the victim, Patrice B. (hereinafter Patrice), at trial with several aliases that she used previously in connection with prostitution arrests. The trial court granted defendant's motion, finding that the use of the aliases was relevant to Patrice's credibility. However, it stated that defendant could not elicit information that Patrice had been arrested for prostitution and could not ask questions that would violate the rape shield statute. Second, the trial court granted the State's motion to impeach defendant at trial with his prior felony conviction for aggravated criminal sexual assault, as well as with the length and date of the sentence. The trial court acknowledged that such evidence would be "somewhat prejudicial" because of the "similarity of offenses." However, it noted that "the prejudicial value is outweighed in this particular case because the jury should know, if he has a motive to lie, just what that motive to lie is and the extent of the motive to lie."

During opening statements, defense counsel stated the following. "As you will hear from the doctors, it is very unlikely that [Patrice] was able to do this [cause defendant's injury] with just her hands. Something had to be used to make this laceration from the front to the back of the anatomy of Mr. Steward."

At trial, Patrice testified that on December 2, 1993, at approximately 4:15 p.m., she was walking in her neighborhood near Van Buren and Kilpatrick in Chicago and saw a friend named Fancy. As she talked with Fancy, defendant walked by and said "Hey baby." When he later asked, "You have a minute?" Patrice said "No." Defendant followed Patrice, grabbed her neck from behind, and dragged her into an apartment building at Van Buren and Kilpatrick. Defendant brought Patrice into a bedroom and said, "Bitch, let me see what you are working with." Patrice ran to the back door, where defendant caught her and punched her in the eye. Defendant then pulled Patrice back into the bedroom, undressed himself and jumped on the bed. He told Patrice, "I just want to f - - - you to death. Now let me see what you're working with." Patrice pretended to take off her shirt and again ran to the back door. Defendant pulled her back into the apartment and hit her on the head and leg several times with a

hammer, causing her head to bleed. Defendant also bit her on the hand and the arm.

Patrice then told defendant that she would do what he wanted. Defendant again brought her to the bedroom and made her remove the three shirts she was wearing. Patrice noticed blood coming from her head and saw blood on her shirts. At trial, Patrice identified those bloody shirts, as well as her headband that fell off when she was in the kitchen. She also testified that after defendant made her take off the shirts, he stood naked in front of her and told her to perform oral sex on him. Patrice then kneeled, grabbed his "groins" and "pulled them for [her] life." Defendant dropped the hammer and fell to his knees, and Patrice ran from the apartment.

Fancy saw Patrice outside and called an ambulance. At Loretto Hospital, Patrice received stitches in her head. She was also treated for the following injuries: a blackened eye, cuts on her back, puncture wounds on her legs, and bite marks on her hand and arm. Patrice testified that while she was at the hospital, she told police officers who questioned her that her name was "Lisa." At the hospital, Patrice identified defendant's picture among a layout of five photographs. She also admitted that she had used different names and birthdates in the past. In addition, Patrice testified that she had used heroin on the day she was attacked.

Chicago police officer Michael Kapior questioned Patrice at the hospital. According to Officer Kapior, Patrice described her attacker's tattoo and clothing. However, he denied that Patrice told him that her name was Lisa. In addition, he testified that he had received a hammer from one of the physicians who told him that the hammer had been taken from Patrice. Officer Kapior identified the hammer, which was introduced as an exhibit at trial, as the one that he had received at the hospital, but testified that the hammer was not in the same condition as when he first saw it. At the hospital, there was dried blood, hair and tissue on the claw of the hammer that was missing at trial.

Thomas Ginnelly, a Chicago police forensic investigator, testified that the hair and the blood found on the hammer had been processed for evidence. However, Officer Ginnelly had not removed or tested any of the blood or hair himself. When Officer Ginnelly first saw Patrice at the hospital, he noticed that she had been beaten. She had swollen eyes, a large puncture wound on the top of her head, several puncture wounds on her back, and injuries on her hand and arm. Officer Ginnelly went to defendant's apartment as assigned and found blood on the kitchen floor, bloodied shirts in the bedroom and living room, and a headband in the kitchen.

After Patrice was treated for her injuries at the hospital, Dr. John Kenney, a forensic odontologist, photographed the bite marks on Patrice's arm and made a cast imprint of them. He also photographed defendant's mouth and made casts of defendant's teeth. Dr. Kenney testified that one of the bite marks on Patrice's arm was consistent with the cast of defendant's teeth.

Chicago police officer Stanley Kroll investigated Patrice's case. He was also assigned to interview defendant, who was being treated at Cabrini Hospital. Officer Kroll testified that he observed defendant's injury and that he photographed defendant's tattoo on his right arm and his upper body. Patrice identified defendant from that photograph.

Dr. Balakrisha Sundar, a board-certified urologist specializing in genital urinary surgery, testified that he was called to the emergency room of Cabrini Hospital to consult on a laceration to defendant's scrotum. Dr. Sundar described defendant's injury as follows:

"The laceration or the cut extended all the way from the right to the left side of the scrotum, dividing the scrotum skin into a front half and a back half. This exposed both the testicles, which were then hanging freely down to the cut skin edges. There was some crushing of the skin edges and some parts of the wound. That's my description of the laceration."

According to Dr. Sundar, it was possible for the injury to have been caused by someone pulling on the scrotum with his or her hand with a lot of force. On cross-examination, Dr. Sundar testified that the "wound did not appear clean cut," and that it was not "a sharp cut laceration" because there was a "crushing of the skin edges." Furthermore, he testified that he was not able to determine exactly how the wound was caused.

Defense counsel asked Dr. Sundar whether he was familiar with defendant's emergency department record from Cabrini Hospital, and Dr. Sundar responded that he was. Dr. Sundar believed that the record was written by the emergency room physician who had asked him to consult on defendant's injury. Defense counsel pointed out to Dr. Sundar that the emergency department record stated that defendant sustained a six- to seven-centimeter "lacerated scrotum with a razor" and asked Dr. Sundar whether his independent findings were consistent with the emergency room physician's finding. Dr. Sundar testified that he believed the laceration to be 10 centimeters. Regarding whether the laceration was caused by a razor, he testified, "It's difficult to know what object caused the injury, except it was not made with a very sharp object."

Regina Golliday testified that she met defendant in 1993, when

he was incarcerated. Defense counsel objected to the incarceration testimony. The trial court sustained the objection and instructed the jury to disregard the statement. Golliday allowed defendant to live in her apartment building at 4701 West Van Buren, near Kilpatrick, in Chicago several days before Patrice was attacked. Golliday did not require defendant to pay rent as long as he worked as a repairman for the building.

At the close of the State's case, defense counsel rested without presenting any evidence. The trial court questioned defendant and advised him that he had a right to testify, that the right was his alone, and that no one could make the decision for him. Defendant stated that he understood his right to testify, that he had discussed the matter with his counsel, and that he did not want to testify.

The trial court then instructed the jury. The jury instructions did not include the affirmative defenses of consent and self-defense. The jury found defendant guilty of attempted aggravated criminal sexual assault and aggravated battery.

Defense counsel filed a motion for a new trial. Defendant then filed a *pro se* motion for a new trial, arguing that his counsel was ineffective for failing to inform him of any trial strategies and for ordering him not to testify at trial. Defendant asserted that his testimony was necessary in order to present defenses of consent and self-defense. Furthermore, he contended that his counsel failed to call Fancy as a witness and failed to cross-examine Patrice's treating physician. Defendant also submitted that because he had filed a complaint against the public defender's office, a conflict of interest existed which prohibited that office from representing him on his posttrial motion or in sentencing. The trial court appointed a public defender to represent him on the posttrial motion. Counsel then filed a supplemental motion for a new trial which contended that trial counsel was ineffective for failing to call the emergency room physician who wrote in the record that defendant's laceration was caused by a razor as a witness. Also, counsel argued that trial counsel was ineffective for failing to properly inform defendant of the necessity of his testimony in order to present self-defense and consent defenses. Counsel argued, "[Defendant] was advised that the fact of his prior conviction would impeach his credibility so much that he would damage his case." According to counsel's motion, defendant was therefore unable to knowingly waive his right to testify at trial.

During the hearing on defendant's motion for a new trial, defendant testified that his trial counsel told him that she preferred him not to testify because he would incriminate himself further. Defendant admitted that trial counsel did not insist that he not testify at

trial. In addition, defendant testified that the trial court had asked him if he wished to testify at trial and that he told the court "No." Defendant explained that he responded that way because his attorneys had informed him ahead of time what to say. The State then called defendant's trial counsel, who testified that she filed the affirmative defenses of consent and self-defense after her "communication" with defendant. Also, she had talked with Dr. Sundar twice and had informed defendant of those conversations. Trial counsel also testified that she had spoken with defendant several times about his case.

The trial court denied the motions for a new trial, finding that defendant's credibility was undermined, where he argued in the motion that trial counsel told him not to testify at trial, yet he testified in the posttrial hearing that trial counsel merely advised him not to testify at trial. The trial court also noted that defendant's treating physician, Dr. Sundar, testified at trial, but did not address defendant's argument that trial counsel should have called as a witness the other physician who wrote that defendant's injury was caused by a razor. Further, the trial court found that there was nothing to indicate that defendant did not understand that he had the right to testify at trial. Finally, it found that the other arguments raised were matters of trial strategy which did not constitute ineffective assistance of counsel.

After hearing evidence in mitigation and aggravation, the trial court sentenced defendant to five years' imprisonment on the aggravated battery conviction and 25 years' imprisonment on the attempted aggravated criminal sexual assault conviction, to run concurrently.

## ISSUES PRESENTED FOR REVIEW

On appeal, defendant argues that: (1) he was denied effective assistance of counsel at trial; (2) he was denied effective, conflict-free assistance of counsel during his posttrial motions; and (3) the trial court erroneously granted the State's pretrial motion to introduce evidence of defendant's prior felony conviction, and therefore denied him a fair trial.

## ANALYSIS

I. Ineffective Assistance of Trial Counsel

Defendant first argues that he received ineffective assistance of counsel at trial. Defendant contends that trial counsel was incompetent for the following reasons: (1) counsel misunderstood the law on self-defense and the necessity that defendant testify at trial; (2)

counsel failed to file a motion *in limine* to prevent the State from using his prior felony conviction at trial and failed to move to prevent the jury from hearing about his prior conviction; (3) counsel failed to move for a mistrial when a witness testified that she met defendant when he was incarcerated; (4) counsel failed to subpoena Patrice's treating physician in order to determine the nature and extent of her injuries; (5) counsel misunderstood the rape shield statute; (6) counsel misunderstood the rules of evidence and failed to make a hearsay objection to Officer Ginnelly's testimony regarding the removal of blood and hair from the hammer; (7) counsel did not fulfill her promise to present evidence that defendant was injured with a razor; and (8) counsel failed to identify, interview and subpoena the original emergency room physician who treated defendant.

■ Because defendant contends that he received ineffective assistance of counsel, we must inquire whether defense counsel's performance was deficient and whether any deficiencies prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984). Defense counsel's assistance was ineffective if the representation fell below an objectively reasonable standard and if there is a reasonable probability that the outcome of the trial would have differed had defense counsel not erred. *People v. Bryant*, 128 Ill. 2d 448, 458, 539 N.E.2d 1221, 1226 (1989). Although defendant's appellate counsel might have proceeded differently at trial, that is not the basis for determining trial counsel's competence. *People v. Ruple*, 82 Ill. App. 3d 781, 786, 403 N.E.2d 129, 133 (1980). Rather, competence depends on the totality of counsel's conduct at trial. *Ruple*, 82 Ill. App. 3d at 786, 403 N.E.2d at 133.

When evaluating ineffective assistance of counsel claims, there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065. Yet, "[t]rial counsel may be deemed ineffective for misunderstanding the applicable law." *People v. White*, 249 Ill. App. 3d 57, 62, 618 N.E.2d 889, 893 (1993); *People v. Hartfield*, 232 Ill. App. 3d 198, 596 N.E.2d 703 (1992).

Furthermore, a claim of incompetence arising from trial strategy does not support an ineffective assistance of counsel claim. *People v. Madej*, 106 Ill. 2d 201, 214, 478 N.E.2d 392, 397 (1985). A defendant must overcome a strong presumption of trial strategy in order to establish counsel's incompetence. *People v. Barrow*, 133 Ill. 2d 226, 549 N.E.2d 240 (1989). Generally, a reviewing court will not inquire into "the exercise of judgment, discretion, trial tactics or strategy even where appellate counsel or the reviewing court might have handled the matter differently." *People v. Schmidt*, 168 Ill. App. 3d 873, 882,

522 N.E.2d 1317, 1323 (1988). Matters of trial strategy include filing motions (*Bryant*, 128 Ill. 2d at 458, 539 N.E.2d at 1226) and calling witnesses and presenting evidence (*People v. Reid*, 179 Ill. 2d 297, 688 N.E.2d 1156 (1997)). However, because a criminal defendant's right to testify at trial is fundamental, the exercise of that right is not a matter of strategy or a tactical decision best left to trial counsel. *People v. Daniels*, 230 Ill. App. 3d 527, 535, 595 N.E.2d 83, 89 (1992).

We may consider whether defendant suffered prejudice without determining whether any deficiency in counsel's conduct existed. *People v. Albanese*, 104 Ill. 2d 504, 527, 473 N.E.2d 1246, 1256 (1984). A defendant must show actual prejudice, and unless there is a reasonable probability that, but for counsel's errors the result would have been different, we will not grant a new trial. *People v. Enoch*, 122 Ill. 2d 176, 202, 522 N.E.2d 1124, 1137 (1988). A reviewing court should dispose of an ineffective assistance of counsel claim based on the lack of prejudice if it is easier to do so than to determine the competency of counsel's performance. *People v. Whitehead*, 169 Ill. 2d 355, 659 N.E.2d 1312 (1996).

■ Defendant submits that because trial counsel misunderstood the law of consent and self-defense, she erroneously advised defendant not to testify at trial and therefore provided defendant with ineffective assistance of counsel. See *People v. Kite*, 153 Ill. 2d 40, 605 N.E.2d 563 (1992) (a defendant must provide a threshold of some evidence in order to properly raise an affirmative defense); see also *People v. Crane*, 145 Ill. 2d 520, 526, 585 N.E.2d 99 (1991) ("[a] defendant is entitled to an instruction on his theory of the case if there is some foundation for the instruction in the evidence"). We disagree with defendant. First, our review of counsel's conduct at trial does not show that she misunderstood the law of consent and self-defense. In her arguments to the jury, trial counsel asserted that Patrice consented to go to defendant's apartment willingly and that defendant never touched Patrice sexually. Also, trial counsel argued that the jury should not believe that Patrice could have caused the injury to defendant's scrotum after she had been injured herself. Second, the record does not show that trial counsel's advice to defendant not to testify at trial reflected her misapprehension of the law of consent and self-defense. Although she had asserted the defenses of consent and self-defense in her opening statement, trial counsel advised defendant not to testify at trial in light of the State's ability to impeach him with a prior conviction for aggravated criminal sexual assault. Rather, this reflects trial counsel's strategy in advising defendant. Defendant himself testified during the hearing on his motion for a new trial that trial counsel preferred that he not testify because he

could have incriminated himself further. The record therefore reflects that trial counsel understood the law of consent and self-defense and advised defendant not to testify based on her assessment of the risks involved. Trial counsel's competence is not based on whether appellate counsel would have advised defendant differently. Regardless of trial counsel's advice, defendant's decision not to testify at trial was his alone. The trial court fully advised defendant of his right to testify at trial and informed him that no one else could make the decision for him. Defendant acknowledged his right to testify and stated that he did not wish to testify. We note that if trial counsel had advised him to testify, or even had ordered him to do so, the decision remained with defendant.

In support of his argument that trial counsel misapprehended the law of consent and self-defense, defendant relies upon several cases in which the defendants' convictions were reversed because of ineffective assistance of counsel. All of those cases contained examples of egregious misapprehensions of the law and are distinguishable from the present case. In *People v. Pugh*, 157 Ill. 2d 1, 623 N.E.2d 255 (1993), the defendant's trial counsel erroneously stipulated that the defendant was eligible for the death penalty because of his felony murder conviction. The supreme court found that the trial counsel's advice to the defendant was therefore based on a misapprehension of the law of death penalty eligibility. *Pugh*, 157 Ill. 2d at 19, 623 N.E.2d at 264. The defendant's trial counsel in *People v. Chandler*, 129 Ill. 2d 233, 543 N.E.2d 1290 (1989), conceded the defendant's guilt during opening statements and closing arguments, did not attempt to develop a theory of innocence, and did not cross-examine several key witnesses. In addition, the trial counsel did not present any witnesses on the defendant's behalf and did not call the defendant to testify despite his promise to the jury that he would. In *Chandler*, the supreme court found that the trial counsel misunderstood the law of murder and felony murder by thinking that the defendant could not be convicted of murder if he did not inflict the fatal blow to the victim. In *People v. Wright*, 111 Ill. 2d 18, 488 N.E.2d 973 (1986), the defendant's trial counsel did not understand that the defendant's intoxication could reduce a voluntary manslaughter charge to involuntary manslaughter. Because of the trial counsel's misapprehension of the law, he failed to introduce substantial evidence of the defendant's intoxication and therefore provided ineffective assistance of counsel. In *People v. Rainey*, 149 Ill. App. 3d 327, 500 N.E.2d 602 (1986), the defendant's trial counsel mistakenly believed that if he introduced an insanity defense, he would be admitting the defendant's commission of the crime. The defendant's trial counsel in *People v.*

*Bonslater*, 261 Ill. App. 3d 432, 633 N.E.2d 830 (1994), failed to move to suppress evidence, did not make an opening statement, failed to cross-examine the State's only witness, and made an erroneous closing argument containing the wrong elements of the charged crime. In *People v. Hattery*, 109 Ill. 2d 449, 488 N.E.2d 513 (1986), the defendant's trial counsel relied upon a defense that did not exist. Finally, in *People v. Redmond*, 50 Ill. 2d 313, 278 N.E.2d 766 (1972), the supreme court found that the defendant's counsel was ineffective for failing to object to unsupported character attacks on the defendant, for offering a confusing and incoherent closing argument, and for admitting the defendant's guilt.

In the present case, trial counsel exhibited no misapprehensions of the law of consent and self-defense. Furthermore, unlike the trial counsel in *Chandler*, defendant's trial counsel made an opening statement and closing argument, cross-examined the State's witnesses, and attempted to discredit Patrice with her testimony on her use of heroin on the day of the incident and her prior use of several aliases. Furthermore, trial counsel never conceded defendant's guilt.

■ Defendant also argues that trial counsel was ineffective for failing to file a motion *in limine* to prevent the State from using his prior felony conviction at trial and to prevent the jury from hearing about his prior conviction; failing to move for a mistrial when Golliday testified that she met defendant when he was incarcerated; and failing to subpoena Patrice's treating physician. We decline to inquire into these issues, which are matters of trial strategy.

■ In addition, defendant contends that trial counsel was ineffective for misunderstanding the rape shield statute (725 ILCS 5/115—7 (West 1996)), and for failing to establish evidence that Patrice and defendant negotiated to have sex for money on the day of the incident. The rape shield statute states in pertinent part:

> "In prosecutions for *** aggravated criminal sexual assault, *** the prior sexual activity or the reputation of the alleged victim is inadmissible except (1) as evidence concerning the past sexual conduct of the alleged victim with the accused when this evidence is offered by the accused upon the issue of whether the alleged victim consented to the sexual conduct with respect to which the offense is alleged ***." 725 ILCS 5/115—7(a) (West 1996).

Defendant relies on *People v. Hughes*, 121 Ill. App. 3d 992, 460 N.E.2d 485 (1984), for the proposition that trial counsel could have elicited testimony that defendant and Patrice had a business arrangement for sex, despite defendant's assertions that they had no sexual contact on the day of the incident. Implicit in defendant's argument is that trial counsel was incompetent for failing to obtain defendant's

testimony about the business arrangement at trial. As we have previously stated, defendant made an informed choice not to testify at trial. The fact that defendant did not testify at trial does not indicate that trial counsel misunderstood the rape shield statute.

Defendant further asserts that trial counsel was ineffective because she misunderstood the rules of evidence and failed to make a hearsay objection to Officer Ginnelly's testimony regarding the removal of blood and hair from the hammer. Officer Ginnelly testified that the hair and blood found on the hammer on the day of the incident had been processed for evidence, but that he had not removed or tested any of the blood or hair himself. Defendant cannot show that he was prejudiced by the alleged error, because there was no issue as to whether or not the hammer was used, and because Officer Ginnelly did not offer any conclusions as to whom the hair or blood belonged.

Also, defendant contends that trial counsel was ineffective for failing to fulfill her promise to present evidence that defendant's scrotum was cut with a razor. We note that defendant has misrepresented trial counsel's "promise." Trial counsel did not state that she would present evidence that a razor caused the injury. Rather, she stated that "[a]s you will hear from the doctors," "[s]omething had to be used to make this laceration from the front to the back of the anatomy of Mr. Steward." In any case, defendant cannot show prejudice from the alleged error because even if trial counsel established that a razor was used, such evidence would not have established whether defendant's injury occurred before or after Patrice's injuries. In other words, evidence of the razor would not have proven that defendant acted in self-defense.

Defendant's final argument regarding trial counsel's allegedly ineffective representation is that counsel failed to identify, interview, and subpoena the original emergency room physician who treated defendant. According to defendant, that physician wrote in the medical report that defendant had been injured by a razor. However, as we have stated, such evidence would not have proven that defendant acted in self-defense. Furthermore, even if trial counsel had interviewed the original emergency room physician and obtained testimony that defendant's injury was caused by a razor, the testimony would not have been conclusive because Dr. Sundar's testimony would have been contradictory. Therefore, defendant cannot show that the alleged error prejudiced him.

## II. Ineffective Assistance of Posttrial Counsel

■ Defendant next argues that he was denied effective, conflict-

free assistance of counsel during his posttrial motions. According to defendant, because his posttrial counsel was his trial counsel's supervisor, both a *per se* and an actual conflict of interest occurred, which deprived defendant of effective assistance of counsel.

When a supervising attorney from the public defender's office is appointed to represent a defendant on a *pro se* posttrial motion alleging ineffective assistance of trial counsel, two types of conflict of interest are possible: *per se* and actual. See *People v. Banks*, 121 Ill. 2d 36, 44, 520 N.E.2d 617, 621 (1987). In *People v. Cano*, 220 Ill. App. 3d 725, 581 N.E.2d 236 (1991), the defendant filed a complaint with the Attorney Registration and Disciplinary Commission (hereinafter ARDC), alleging that his public defender was incompetent at trial. The trial counsel's supervisor from the public defender's office was then appointed to represent the defendant in his *pro se* posttrial motion "to reopen trial and present additional evidence," which was treated as an ineffective assistance of counsel claim. At the hearing on that motion, posttrial counsel asked the court not to place him in the position of arguing that trial counsel was ineffective. The trial court told posttrial counsel that he would be required to argue the motion, unless it was withdrawn. The motion was then withdrawn. The appellate court found that because of the nature of their adversarial positions, it was impossible for the posttrial counsel "to render allegiance to [the] defendant." *Cano*, 220 Ill. App. 3d at 731, 581 N.E.2d at 240. Furthermore, the appellate court found that the trial court's ultimatum unduly influenced the posttrial counsel to advise the defendant to withdraw the claim of ineffective assistance. In light of the fact that the posttrial counsel acknowledged the conflict in arguing that trial counsel was ineffective, the appellate court noted that the trial and posttrial counsel's pressures to protect their personal interests were in direct *per se* conflict with the defendant's interest. *Cano*, 220 Ill. App. 3d at 731, 581 N.E.2d at 240.

In *People v. Levesque*, 256 Ill. App. 3d 639, 628 N.E.2d 272 (1993), the defendant also argued on appeal that because he had filed an ARDC complaint against the public defender who represented him at trial, the trial court erred in allowing him to be represented during posttrial motions by the trial counsel's supervisor. Relying on *Cano*, the defendant contended that there was a *per se* conflict because the posttrial counsel would be unable to set aside his "natural allegiance" to the trial counsel. *Levesque*, 256 Ill. App. 3d at 649, 628 N.E.2d at 279. However, the appellate court declined to follow *Cano*, finding that it was worded too broadly and that it ignored the well-settled holding that a *per se* conflict of interest does not exist simply because a defendant alleges ineffective assistance of counsel in a motion or in

an ARDC complaint. The appellate court stated, "it is indisputable that no *per se* conflict exists between a defendant and the supervisor of the attorney alleged to be professionally deficient." *Levesque*, 256 Ill. App. 3d at 649, 628 N.E.2d at 279. The *Levesque* court further noted that when a *per se* conflict does not exist, an inquiry must be made as to whether an actual conflict exists. See *Banks*, 121 Ill. 2d at 44, 520 N.E.2d at 621.

As in *Levesque*, we decline to follow *Cano*. Posttrial counsel in this case did not ask to be removed from representing defendant and acknowledged no conflict of interest. Rather, posttrial counsel argued in the posttrial hearing that trial counsel made several errors. We find that no *per se* conflict existed.

Furthermore, we find that there was no actual conflict of interest. Posttrial counsel argued that trial counsel should have insisted that defendant testify at trial and that trial counsel should have subpoenaed the physicians she wanted to testify. Also, posttrial counsel elicited defendant's testimony about trial counsel's advice not to testify at trial. Defendant's argument that posttrial counsel failed to inform the trial court of trial counsel's alleged misapprehension of the law and failure to file certain motions fails because, in light of our previous discussion, defendant cannot show that he was prejudiced by posttrial counsel's alleged errors.

### III. Trial Court Error

■ Defendant's final argument is that the trial court erred in granting the State's pretrial motion and holding that it could impeach him with his prior conviction and sentence for aggravated criminal sexual assault if he testified at trial. According to defendant, the trial court's holding denied him his constitutional right to a fair trial.

Defendant contends that the trial court's ruling was in violation of *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d·695 (1971), and its progeny. *Montgomery* established a three-pronged rule for determining whether and how a prior conviction may be used to impeach a defendant who testifies at trial. First, the prior conviction must have been for a crime punishable by death or imprisonment in excess of one year, or have involved a crime of dishonesty or false statement. Second, the conviction must have occurred, or the defendant must have been released from custody, within the previous 10 years. Third, if the first two prongs are met, the trial court must balance the prejudicial nature of revealing the conviction with the probative value regarding the defendant's credibility at trial.

However, a defendant cannot appeal the trial court's ruling on a motion *in limine* where the trial court allowed the State to impeach

the defendant at trial with a prior conviction if the defendant did not testify at trial. *People v. Whitehead*, 116 Ill. 2d 425, 442-44, 508 N.E.2d 687, 693 (1987), citing *Luce v. United States*, 469 U.S. 38, 42, 83 L. Ed. 2d 443, 448, 105 S. Ct. 460, 463 (1984); *People v. Benson*, 266 Ill. App. 3d 994, 641 N.E.2d 617 (1994).

> " '[A] defendant's decision whether to testify at trial cannot be used as a bargaining tool with the trial court regarding its determination to grant or deny the motion to preclude evidence of the prior convictions. The defendant's refusal to testify, standing alone, cannot serve as the basis for a conclusion that he is prejudiced.' " *Benson*, 266 Ill. App. 3d at 1002, 641 N.E.2d at 624, quoting *People v. Gray*, 192 Ill. App. 3d 907, 916, 549 N.E.2d 730, 736 (1989).

As the supreme court in *Whitehead* found, unless the defendant testifies at trial, the reviewing court is deprived of a record upon which to decide whether the trial court erred. "[D]efense counsel may not have it both ways by altering their trial strategy to make the best of the trial court's order, depriving the reviewing court of a reviewable record, and still maintain that the order was erroneously entered." *Whitehead*, 116 Ill. 2d at 443-44, 508 N.E.2d at 693.

In the present case, defendant chose not to testify at trial. Therefore, his argument that the trial court violated *Montgomery* fails. As in *Whitehead*, we have no reviewable record upon which to determine whether the trial court's order was in error.

In sum, we find that no ineffective assistance of trial and post-trial counsel existed. Furthermore, we cannot determine whether the trial court erred in granting the State's motion *in limine* to impeach defendant's testimony at trial with evidence of a prior conviction, where defendant chose not to testify at trial.

In light of the foregoing, we affirm the judgment of conviction of the circuit court.

Affirmed.

McNULTY, P.J., and RAKOWSKI, J., concur.