THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RODOLFO CANO, Defendant-Appellant.

First District (1st Division)   No. 1—89—0206

Opinion filed September 30, 1991.

Michael J. Pelletier and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter Piltehner, Howard D. Wiesman, and Alexandra C. Buzanis, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant Rodolfo Cano was convicted of criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13(a)(1), (a)(2)), and sentenced to eight years in prison. On appeal the defendant argues that he was denied effective assistance of counsel and denied his right to conflict-free representation.

Defendant and Jackie Cano were divorced prior to 1984. Jackie Cano received custody of their two sons, one, six years of age and the other eight years of age. No visitation rights were provided in the dissolution order, although defendant occasionally visited with the children at Jackie Cano's home.

In September 1985, Jackie Cano married George Blanton and defendant married Marjorie. The two boys continued to live with Jackie and George. Defendant often took the boys to his trailer home in Lynwood, Illinois, to visit with him and his wife.

Jackie testified that about July of 1986 the two children's behavior changed. She explained that the six-year-old son (hereinafter the victim) was frequently involved in fights, refused to follow instructions, had problems at school and no longer wanted to visit with his father. Jackie talked with him about his behavior change, but he gave her no explanation for his actions.

On September 6, 1986, defendant took the children to his home for a visit. Jackie testified that defendant took the children on Saturday afternoon and brought them back to her home on Sunday, September 7, 1986. One week later, Jackie again talked with the victim about his behavior change and advised him that she was concerned and would help him. She testified that while assisting the victim shampoo his hair he told her not to touch him "down there," and pointed to his genitals. He then stated that he did not like it when people touched him in that area. Jackie asked the victim who had touched him in that area and he replied his dad, "Ralph." Jackie testified that she did not observe any physical marks on the victim or take him to receive medical treatment. However, the victim did receive counseling.

The victim testified that on September 6, 1986, he and his brother visited with the defendant at his trailer home and stayed overnight. He explained that on Saturday, while he was taking a bath, the defendant entered the room, sucked the victim's penis, then pulled down his own pants and placed his penis in the victim's mouth. The victim stated that this incident happened after the first week of school; however, he did not tell anyone until one week later.

Kathleen Kelly testified at trial that she was employed as a social worker in Cook County. Her speciality was "play therapy." On October 20, 1986, she met with the victim and was advised that he had talked with the police because his father had given him "bad touches." Kelly stated that at a later session with the victim, using anatomically correct dolls, the victim demonstrated for Kelly how he and the defendant performed fellatio. Kelly testified that the victim took the adult male doll and placed its penis inside the male child doll's mouth. He then reversed the dolls and placed the penis of the male child doll inside the adult male doll's mouth. Kelly explained that the victim then lifted the male doll, hit it and threw it while stating "this is what Ralph did." Kelly concluded that the victim's doll demonstration was his recollection of a past experience.

Officer William Windsor testified that on September 14, 1986, he initially spoke with the victim and his mother at the Lynwood police station, but that he later spoke with the victim alone. He stated that the victim told him that on the night of the incident the defendant came into the bathroom while he was bathing and kissed and licked his penis. Windsor stated that the victim also told him that the defendant forced him to lick and kiss the defendant's penis. Windsor did not examine the victim for physical marks.

Defendant's wife Marjorie testified that on September 6, 1986, she and the defendant arranged to meet the victim and his brother at Jackie's home. They met the boys about 2:30 p.m. and drove to a video store where they purchased a videotape. They then drove to her mother's home in Indiana, visited with her about five hours, then left. She testified that they made several stops before arriving home about 10:30 p.m. She stated that defendant had a headache, took medication and went to bed. Marjorie testified that the victim and his brother later fell asleep on the sofa bed after watching a videotape. She testified that they did not take a bath before going to bed that night. She further testified that when she went to bed that night defendant was asleep and the following morning he was still

in bed when she awoke. He later left the bed, took medicine and returned, while the children remained on the sofa bed.

Defendant testified that about 3 p.m. on September 6, 1986, he and Marjorie drove to the victim's home and took the victim and his brother to their home for a visit. He stated that they made several stops before they returned home about 10 p.m. that night. He claimed that he was ill that night and took medicine before he went to bed. Defendant testified that he did not get out of bed until the following morning when he again took medicine and returned to bed. He stated that after taking the children to lunch about 12 noon, he and Marjorie took the children home. He stated that he did not assist the children dress that morning, and denied having any sexual contact with them.

Following defendant's trial but before sentencing, he filed a complaint with the Attorney Registration and Disciplinary Commission (ARDC) against Thomas Pavletic, the assistant public defender representing him. Defendant alleged that the assistant public defender was ineffective in his representation because he failed to call defendant's brother as a witness. Defendant also alleged ineffective assistance of counsel in his *pro se* post-trial motion. Pavletic informed the court that he was ready to proceed on his motion for new trial and sentencing; however, he advised the court that he was not sure if he could properly represent defendant with the ARDC complaint pending against him. The court considered appointing another public defender to represent defendant in his motion for a new trial; however, Mr. Carmody, Pavletic's supervisor, assured the court that Pavletic was the most competent attorney to handle the case. Carmody, however, advised the court that it should appoint the State Appellate Defender to handle any appeal. The court then allowed Pavletic to represent defendant in his motion for a new trial, which motion was denied. Pavletic then presented the court with defendant's *pro se* motions for appointment of a bar association attorney; for appointment of counsel other than the public defender; and defendant's motion to reopen the trial and present additional evidence. The court denied defendant's first two motions, but appointed Carmody to handle defendant's motion to reopen the trial.

On January 18, 1989, the cause came on for disposition of the motion regarding trial counsel's failure to present the additional evidence and for sentencing. Defendant sought to introduce: (1) evidence that he had purchased medicine which he had taken the weekend of September 6, 1986; (2) evidence that he had purchased

a videotape the same day of the alleged offense; and (3) transcripts of another case wherein defendant's brother was convicted for sexually abusing the victim. Carmody informed the court that the motion alleged the incompetence of his subordinate and stated that, "I would ask the court not place me in a position of arguing on behalf of the defendant and against Pavletic, of whom I am his supervisor." The defendant later withdrew his ineffective assistance of counsel allegation and his *pro se* motion to reopen his trial. The matter proceeded to sentencing at which Pavletic resumed his representation of the defendant. The court heard evidence in mitigation and aggravation before sentencing defendant to eight years in prison.

Defendant first argues that his right to effective assistance of counsel was violated. Specifically, he contends that defense counsel's failure to introduce evidence that two months prior to the alleged incident the victim had been sexually abused by someone else resulted in prejudice sufficient to meet the test established in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. We disagree.

In *Strickland*, the court held that in order for a defendant to succeed on an ineffective assistance of counsel claim he must first show that counsel's performance was so deficient that it fell below an objective standard of reasonableness and that the performance prejudiced the defense of the case. (466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In determining whether a defendant has been prejudiced, the defendant must show that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. (*People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246.) In determining the adequacy of legal assistance, a reviewing court will not focus on isolated instances of alleged deficiencies, but, rather, must consider the totality of circumstances. *People v. McNutt* (1986), 146 Ill. App. 3d 357, 496 N.E.2d 1089.

Defendant's initial claim here is one that attacks defense counsel's trial strategy. A reviewing court will not generally inquire into defense counsel's exercise of judgment, discretion, trial tactics or strategy, even where the court might have handled the matter differently. (*People v. Schmidt* (1988), 168 Ill. App. 3d 873, 882, 522 N.E.2d 1317.) Defendant maintains that the victim's behavioral change resulted from an earlier sexual assault by the defendant's brother. He contends that because this fact was not brought to the court's attention, he was prejudiced thereby.

Even if the court had known this fact, there is overwhelming evidence in the record of defendant's guilt, independent of the victim's behavioral change. The victim himself testified to the assault; the therapist explained the victim's condition and the court weighed the credibility of the witnesses.

For the foregoing reasons, we find that defendant's claim is without merit, and we decline to reverse the conviction.

Defendant next argues that he was denied effective assistance of counsel because a *per se* conflict existed. Defendant maintains that the trial court should not have allowed the assistant public defender to represent him on the motion for a new trial, and that the supervisor should not have handled defendant's *pro se* post-trial motions. He asserts that the supervisor's interest in protecting the professional reputation of his subordinate conflicted with defendant's interest in advancing his claim of ineffective assistance. We agree.

■ Normally, to prevail on a claim of ineffective assistance, an accused must show prejudice. (*People v. Owens* (1989), 129 Ill. 2d 303, 544 N.E.2d 276.) However, when the claim of ineffective assistance constitutes an allegation of a conflict of interest, an accused need not always show prejudice. (*People v. Holmes* (1990), 141 Ill. 2d 204, 220, 565 N.E.2d 950.) A *per se* conflict of interest arises where, by its nature, the conflict subjects counsel to subtle pressures adversely affecting his representation of the accused. *People v. Taylor* (1988), 165 Ill. App. 3d 1016, 1021, 520 N.E.2d 907.

Here, the defendant filed a complaint with the Attorney Registration and Disciplinary Commission against public defender Pavletic, alleging incompetency. The complaint was filed after trial, but before sentencing. By filing the complaint, defendant and Pavletic were placed in an adversarial relationship. Pavletic advised the court of this fact, but his supervisor, Mr. Carmody, assured the court that Pavletic was the most competent attorney to handle the case. With the court's approval and the ARDC charge pending, Pavletic argued defendant's motion for a new trial. The motion was denied.

Defendant then filed *pro se* motions for appointment of counsel outside the public defender's office; appointment of a bar association attorney; and to reopen trial and present additional evidence. After the court denied defendant's first two motions, Carmody accepted appointment as counsel and asked for a continuance. Carmody advised the court that defendant's third motion would be treated as an ineffective assistance claim.

At the hearing on that motion, Carmody requested that the court "not place [him] in a position of arguing a motion on behalf of the defendant and against Mr. Pavletic [assistant public defender], of whom I am his supervisor." The court instructed Carmody that he would have to argue the motion unless it was withdrawn. The following colloquy then occurred:

"Mr. Carmody [supervisor]: Mr. Cano, you and I have spoken, is that correct?

[Defendant]: Yes, sir.

Q. I have interviewed you regarding your motion regarding incompetency, is that correct?

A. Yes, sir.

Q. You have filed it before this court, is that correct?

A. Yes, sir.

Q. Is it your desire to not have a hearing on that matter today?

A. Yes.

Q. And you do that understanding that you may or may not raise it in the future after the sentencing, is that correct?

A. Yes, sir.

Q. Judge, at this time I'd ask leave to withdraw the *pro se* motion of the defendant."

■ By nature of their adversarial position, it was impossible for Pavletic to render allegiance to defendant. The ARDC charge was pending when Pavletic argued the motion for a new trial, and, obviously, this fact created competing interests that hindered Pavletic's allegiance. Although Carmody assured the court that Pavletic was the most competent attorney to handle the case, Carmody's interest in protecting the professional reputation of his subordinate conflicted with defendant's interest in advancing his claim of ineffective assistance. Further, by Carmody's own admission he recognized a conflict and requested that the court not force him to argue on behalf of defendant and against Pavletic. It appears from the record that the court's alternative placed before Carmody unduly influenced Carmody to persuade the defendant to drop his ineffective assistance charge.

Effective assistance means assistance by an attorney whose allegiance to his client is not diluted by conflicting interests or inconsistent obligations. (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 13, 525 N.E.2d 30.) Defendant was not given total allegiance here as there were pressures on Carmody and Pavletic to protect their personal interest, which was in direct conflict with defendant's interest.

Therefore, we find that a *per se* conflict existed at the sentencing hearing.

For the foregoing reasons, the sentence is vacated and remanded for a new hearing on post-trial motion and sentencing, at which an attorney unassociated with the public defender's office shall be appointed.

Affirmed in part; vacated in part and remanded for further proceedings.

BUCKLEY and O'CONNOR, JJ., concur.