THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HAY-WOOD COOK, Defendant-Appellant.

First District (1st Division)   No. 1—93—4426

Opinion filed December 29, 1995.—Rehearing denied May 15, 1996.

Robert H. Anderson, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Sheila McGinnis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BUCKLEY delivered the opinion of the court:

Defendant, Haywood Cook, was convicted of possession of a stolen motor vehicle and criminal trespass to a motor vehicle. Defendant appeals, raising the following issues: (1) whether the criminal trespass to a vehicle conviction should be vacated, (2) whether the trial court erred in denying defendant's motion to quash the arrest and suppress the evidence, (3) whether the trial court erred in refusing to appoint counsel for the defendant other than the public defender, (4) whether the trial court erred in allowing a peeled steering column to be used

as demonstrative evidence, and (5) whether the trial court erred in sentencing defendant as a Class X offender to a term in excess of the Class X minimum.

Defendant was arrested in Chicago at 71st Street and Halsted on July 27, 1992, by Chicago police officer Maurice McNulty. Defendant filed a motion to quash the arrest and suppress the evidence. At the suppression hearing, Officer McNulty testified that at about 4:15 a.m. on July 27, 1992, he and two other officers were in an unmarked squad car when they noticed a white 1985 Oldsmobile Cutlass with a broken taillight. They followed the vehicle for about one mile during which time they ran a license plate check on the Cutlass and determined it to be registered to Orville Jackson, a 73-year-old man who had not reported the car stolen. Officer McNulty testified that the Cutlass stopped at a gas station at 71st and Halsted. He testified that the officers pulled up parallel to the Cutlass, one or two feet away on the passenger side. He stated that he observed defendant, whom he ascertained to be younger than 73 years old, in the driver's seat. He also testified that the car was still running although there was no key in the ignition, the steering column was peeled, the driver's side window was broken out, and a screwdriver and a mallet were on the floor of the vehicle. Officer McNulty also testified that defendant did not know the license plate number of the car. The officers then took defendant out of the car and placed him under arrest.

Defendant's testimony at the suppression hearing was inconsistent with that of Officer McNulty on only a few points. Defendant testified that the officers stopped their car about 50 feet away from the Cutlass and approached the driver's side of the Cutlass when he walked toward the cashier. Defendant also testified that he was arrested away from the Cutlass and that he was unsure whether or not the taillight was broken.

The trial judge denied the defendant's motion to quash the arrest and suppress the evidence, and the case proceeded to trial. Oliver Jackson, the owner of the Cutlass, testified that he lent the car to his daughter on July 26. He also testified that he had not given permission to anyone else to use the car and, specifically, that he had not given the defendant permission to use the car. He stated that he received a telephone call from Officer McNulty at about 5 a.m. on July 27, and that he met Officer McNulty at the police parking lot later that day. He testified that the driver's side window was shattered, the taillight was broken, the glove compartment was broken, and a screwdriver and a mallet that he did not own were in the car.

Officer McNulty testified as to the sequence of events surround-

ing the defendant's arrest in essentially the same way he testified in the suppression hearing. He also testified that in order to start a vehicle without a key, it is necessary to bypass the locking mechanism and that this is usually done by peeling the steering column. As he explained the process of peeling a steering column, he used a peeled steering column manufactured by General Motors to demonstrate the process. Defendant objected, and the trial court allowed the peeled column to be used for demonstrative purposes, but would not allow it into evidence.

The jury found defendant guilty of possession of a stolen motor vehicle and criminal trespass to a vehicle. Defendant's motion for a new trial was denied. At the sentencing hearing, the State argued that a Class X sentence was mandatory because defendant had been previously convicted of four Class 2 felonies within the past 10 years. Defendant argued in mitigation that he was 44 years old, single, and supporting a 16-year-old child. He also argued that he was just short of obtaining an associate's degree, that he had high blood pressure, that he has never committed any violent crime, and that he was seeking treatment for alcohol, crack cocaine and heroin abuse.

The trial court sentenced the defendant to 15 years in prison, citing his habitual criminal activity.

■ The State concedes that criminal trespass to a vehicle is a lesser included offense of possession of a stolen motor vehicle. (*People v. Owens* (1990), 205 Ill. App. 3d 43, 46, 563 N.E.2d 75, 77.) Therefore, defendant's conviction for criminal trespass to a vehicle is vacated.

Defendant contends that the officers who arrested him lacked probable cause to believe that he committed a crime and, therefore, that the trial court erred in refusing to quash the arrest and suppress the evidence. The critical task in deciding whether probable cause exists is to determine what facts were known to the arresting officer at the time of the arrest. (*People v. Adams* (1989), 131 Ill. 2d 387, 396, 546 N.E.2d 561, 565.) Probable cause sufficient to make a warrantless arrest exists if the information known to the arresting officer at the time of the arrest, "taken in its totality, and interpreted not by technical legal rules but by factual and practical common-sense considerations, would lead a reasonable and prudent person to believe that the person stopped had committed an offense." (*Adams*, 131 Ill. 2d at 396-97, 546 N.E.2d at 565.) There need not be evidence sufficient to establish guilt beyond a reasonable doubt. (*People v. Jones* (1990), 196 Ill. App. 3d 937, 954, 554 N.E.2d 516, 526.) Ordinarily, the decision of the trial court in ruling on a motion to quash an arrest will not be disturbed absent a finding of clear error. *People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192, 197.

█ In this case, the arresting officers were aware of the following relevant facts: the car was running, although there was no key in the ignition; the steering column was peeled; the car was registered to a 73-year-old man, but the defendant was clearly younger than that; the defendant did not know the license plate number of the car; the driver's side window was shattered; and, according to Officer Mc-Nulty, a screwdriver, a rubber mallet, and pieces of the steering column were on the floor of the car. Furthermore, the arresting officers were assigned to the automobile theft section of the Chicago police department. They were aware that peeling the steering column in order to bypass the locking mechanism is a very common way to steal a car and that a screwdriver and a mallet are the tools most often used. We agree with the trial court that a reasonable and prudent person applying common sense and with knowledge of these facts would believe that defendant had stolen the car.

Defendant next contends that the trial court erred in denying the motion of defendant's counsel to withdraw. Before trial, defendant filed a complaint against the public defender with the Attorney Registration and Disciplinary Commission (ARDC) alleging that the assistant public defender assigned to represent him neglected his case by only visiting him in jail once. Defendant argues that his continued representation at trial by the public defender's office after he filed this ARDC complaint constituted a *per se* conflict of interest and that he should have been assigned a bar association attorney at the county's expense. Defendant has misplaced his reliance on the case of *People v. Cano* (1991), 220 Ill. App. 3d 725, 581 N.E.2d 236.

In *Cano*, the defendant filed a complaint with the ARDC against Assistant Public Defender Thomas Pavletic, who represented defendant in a criminal sexual assault case. The complaint was filed after trial but before any post-trial motions. Defendant then filed a number of *pro se* motions, including a motion to reopen the trial, which was treated as an ineffective assistance of counsel claim, and a motion for appointment of counsel outside the public defender's office. The court ordered Pavletic's supervisor, Mr. Carmody, to represent defendant in his claim that Pavletic provided ineffective assistance of counsel. *Cano*, 220 Ill. App. 3d at 730-31, 581 N.E.2d at 240.

This court held that there would be a direct conflict of interests for Pavletic to argue the defendant's motion to reopen the case because he would be arguing that he himself provided ineffective assistance of counsel. (*Cano*, 220 Ill. App. 3d at 731, 581 N.E.2d at 240-41.) We also held that a conflict of interest existed for Carmody to argue the motion; he must be an advocate for his client, but he must also protect the reputation of his office. (*Cano*, 220 Ill. App. 3d at 731,

581 N.E.2d at 241.) This situation would put the interests of the defendant directly at odds with those of his attorney. Therefore, we vacated the defendant's sentence and remanded to the trial court with instructions that an attorney not associated with the public defender's office be assigned to represent the defendant in his posttrial motions and at sentencing. *Cano*, 220 Ill. App. 3d at 732, 581 N.E.2d at 241.

■ This case is different because there is no conflict of interest as there was in *Cano*. Here, defendant claims that there was a conflict of interest in the assistant public defender's representation of defendant at trial. However, the assistant public defender and defendant had mutual interests in obtaining an acquittal at trial. Such a result would have both freed the defendant and proven that the public defender's assistance of counsel was effective. The assistant public defender was not asked in this case, as he was in the *Cano* case, to argue for a result that would be injurious to him personally. Therefore, our decision in *Cano* is inapposite to the facts at issue here.

"Our courts have invariably held that a *per se* conflict of interest between a defendant and his attorney is *not* created simply because the defendant claims that his representation was ineffective or because, as was done here, he files a complaint with the ARDC alleging the same. [Citations.]" (Emphasis in original.) (*People v. Jackson* (1993), 243 Ill. App. 3d 1026, 1033, 614 N.E.2d 94, 99.) However, *Jackson* and all the cases cited in that case involved post-trial claims of ineffective representation. (*Jackson*, 243 Ill. App. 3d at 1033, 614 N.E.2d at 99; *People v. Nitz* (1991), 143 Ill. 2d 82, 133-34, 572 N.E.2d 895, 918-19; *People v. Carroll* (1992), 260 Ill. App. 3d 319, 337, 631 N.E.2d 1155, 1166-67; *People v. Dean* (1992), 226 Ill. App. 3d 465, 468, 589 N.E.2d 888, 890; *People v. Jackson* (1985), 131 Ill. App. 3d 128, 138, 474 N.E.2d 466, 474.) Where, as here, a defendant's request for appointment of a bar association attorney is made before trial and in the context of a claim of ineffective assistance of counsel, the request should be scrutinized even more closely than post-trial claims for two reasons. First, as discussed above, there is no conflict of interest at trial because the attorney and the defendant have the identical interest of obtaining an acquittal. This mutuality of interests does not exist when an attorney is asked to argue a post-trial motion that he or a colleague provided ineffective assistance of counsel. Second, to require the appointment of a bar association attorney anytime a defendant files an ARDC complaint against the public defender's office before trial would invite frivolous complaints from defendants who, for one reason or another, may prefer to be represented by someone

outside the public defender's office. Although an indigent defendant has the right to have the court appoint competent counsel to represent him, he does not have the right to select his court-appointed attorney. (*People v. Woods* (1963), 26 Ill. 2d 557, 560, 188 N.E.2d 1, 3.) The trial court is required to appoint the public defender unless it determines that such an appointment would prejudice the defendant's rights. (725 ILCS 5/113—3(b) (West 1992).) Defendant in this case suffered no prejudice from the appointment of the public defender to represent him because there was no conflict of interest. Defendant has not even raised the issue of prejudice on appeal. Therefore, the trial court properly refused to allow the public defender to withdraw as counsel for the defendant.

Defendant next claims that the trial court erred in allowing Officer McNulty to use a peeled steering column provided by General Motors as demonstrative evidence while he explained the process of peeling the steering column. The purpose of demonstrative evidence is to aid the trier of fact in interpreting, understanding, and weighing other evidence or testimony. (*People v. Smith* (1992), 241 Ill. App. 3d 365, 380, 610 N.E.2d 91, 100.) The decision of whether to allow a witness to use a demonstrative aid is within the sound discretion of the trial court and will not be reversed upon review absent an abuse of that discretion which results in prejudice to the defendant. *Smith*, 241 Ill. App. 3d at 380, 610 N.E.2d at 100.

■ Defendant's contention that the steering column used during Officer McNulty's testimony was prejudicial, and used only for dramatic effect, is without merit. The record indicates that Officer McNulty used the exhibit to illustrate the process he was simultaneously describing. The trial court's ruling that the exhibit was informative as an illustration was not an abuse of discretion. Furthermore, given the corresponding testimony of the officer and the other evidence presented in the trial, this demonstrative aid was not prejudicial to defendant.

The final issue raised by the defendant is whether the trial court erred in sentencing him as a Class X offender and in failing to impose the minimum Class X sentence.

Initially, the State claims that defendant waived his right to appeal this issue because he did not object to being sentenced as a Class X offender at sentencing. However, the Illinois Supreme Court's decision in *People v. Lewis* (1994), 158 Ill. 2d 386, 634 N.E.2d 717, held otherwise. In *Lewis*, the court held that the statute authorizing defendants to file a motion to reduce the sentence uses the word "may," and, therefore, it is permissive. (*Lewis*, 158 Ill. 2d at 389, 684 N.E.2d at 719.) The motion is not mandatory in order to perfect the

record for appeal of the sentence. (*Lewis*, 158 Ill. 2d at 389-90, 634 N.E.2d at 719.) The State claims that an amendment to the statute changed "may" to "shall," thereby making post-trial motions to reduce the sentence mandatory in order to perfect the record. The State's argument is a misstatement of the law.

■ Section 5—8—1(c) of the Unified Code of Corrections states now, as it did when the court decided *Lewis*, "A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed." (730 ILCS 5/5—8—1(c) (West 1994).) The amendment cited by the State merely added, "A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence." (730 ILCS 5/5—8—1(c) (West 1994).) Therefore, the right to file a motion to reduce the sentence is still permissive; the amendment merely added a procedural requirement that any such motion must be filed in writing within 30 days. As the supreme court held in *Lewis*, this provision does *not* require the motion to be filed "as a prerequisite to the appeal of matters related to sentencing." (*Lewis*, 158 Ill. 2d at 390, 634 N.E.2d at 719.) Therefore, sentencing issues were not waived.

Defendant contends that the State was required to notify defendant of its intention to seek an enhanced sentence and that its failure to do so precludes a Class X sentence for possession of a stolen motor vehicle, a Class 2 offense. Section 111—3 of the Code of Criminal Procedure of 1963 provides that "[w]hen the State seeks an enhanced sentence because of a prior conviction, the charge shall also state the intention to seek an enhanced sentence and shall state the prior conviction so as to give notice to the defendant." (725 ILCS 5/111—3(c) (West 1992).) The Unified Code of Corrections, however, provides that where a person is convicted of any Class 1 or 2 felony and has previously been convicted of at least two other Class 2 or greater felonies arising out of separate acts, "such defendant shall be sentenced as a Class X offender." (730 ILCS 5/5—5—3(c)(8) (West 1992).) In this case, defendant had four prior Class 2 felony convictions, but the State did not notify defendant that it was seeking an enhanced sentence. Defendant claims that the State's failure to give such notice required the trial court to sentence defendant within the Class 2 range of three to seven years. (730 ILCS 5/5—8—1(a)(5) (West 1992).) The State counters that since defendant had four prior Class 2 felony convictions, a Class X sentence was mandatory.

■ This apparent conflict between section 111—3(c) of the Code of Criminal Procedure and section 5—5—3(c)(8) of the Unified Code of Corrections was recently addressed by the Illinois Supreme Court in

*People v. Jameson* (1994), 162 Ill. 2d 282, 642 N.E.2d 1207. In *Jameson*, the court found that section 111—3 does not require the State to give defendants pretrial notice that they would be sentenced as Class X offenders under section 5—5—3. (*Jameson*, 162 Ill. 2d at 288, 642 N.E.2d at 1210.) The court reasoned that section 111—3 defines "enhanced sentence" as one that is lengthened because the prior conviction increases the classification of the offense now charged. (*Jameson*, 162 Ill. 2d at 288, 642 N.E.2d at 1210; 725 ILCS 5/111—3(c) (West 1992).) The court held that while section 5—5—3 increases the sentence, "the classification of offense with which the defendant is charged and convicted remains the same." (*Jameson*, 162 Ill. 2d at 290, 642 N.E.2d at 1211.) Therefore, under section 5—5—3, although defendant's prior convictions enhance his sentence to a Class X sentence, the current conviction, possession of a stolen motor vehicle, is still a Class 2 felony. Therefore, the notice requirement of section 111—3 does not apply.

■ Defendant also argues that the trial court improperly considered the same prior convictions as aggravating factors that it considered in enhancing the sentence to Class X. The statutorily prescribed Class X sentence is 6 to 30 years. (720 ILCS 5/5—8—1(a)(3) (West 1992).) Sentencing is a matter for the discretion of the trial court, and its decision is entitled to great weight and deference. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492-93, 431 N.E.2d 344, 348.) Even if no aggravating factors are present, defendant is not necessarily entitled to a minimum sentence. (*People v. Harvey* (1987), 162 Ill. App. 3d 468, 475, 515 N.E.2d 337, 342 (defendant is not entitled to a near minimum sentence when his sentence is enhanced to Class X because of recidivism, even where no aggravating factors are present).) The trial court in this case found that defendant's habitual criminal activity dictated a sentence of 15 years. This falls toward the low end of the Class X range, 9 years above the minimum and 15 years below the maximum. Therefore, the sentence is not excessive.

Even if aggravating factors were necessary prerequisites to a sentence greater than the minimum, permissible aggravating factors exist here. When a sentence is enhanced to Class X because of prior convictions, the trial court may not use the same convictions as aggravating factors. (*People v. Ward* (1993), 243 Ill. App. 3d 850, 852, 611 N.E.2d 590, 592.) However, it may consider the fact that defendant had more than two prior Class 2 or higher convictions as aggravating factors. (*Harvey*, 162 Ill. App. 3d at 475, 515 N.E.2d at 342.) Thus, the court may allocate the defendant's prior convictions—two toward enhancement, the rest toward aggravation. Here, defendant

had four prior Class 2 convictions. Therefore, the court could have considered two for enhancing the sentence to Class X and two as aggravating factors. Defendant cites the case of *People v. Owens* (1990), 205 Ill. App. 3d 43, 563 N.E.2d 75; however, that case involved a defendant who only had two prior Class 2 felony convictions.

Nonetheless, as discussed above, the court need not find any aggravating factors to sentence defendant to a term in the middle of the statutorily prescribed range. Therefore, defendant's sentence of 15 years in prison was a proper exercise of the trial court's discretion.

For the foregoing reasons, defendant's conviction for possession of a stolen motor vehicle and his 15-year sentence are affirmed. Defendant's conviction for criminal trespass to a vehicle is vacated.

Affirmed in part; vacated in part.

CAMPBELL, P.J., and BRADEN, J., concur.