THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CONTRELL WILLIAMS, Defendant-Appellant.

Fourth District   No. 4—95—0126

Argued October 15, 1996.—Opinion filed December 6, 1996.

Daniel D. Yuhas and Duane E. Schuster (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant Contrell Williams and codefendant Tyrone Humphrey were charged with the September 5, 1994, first degree murder (720 ILCS 5/9—1(a) (West 1994)) of Sheri Ellis, a clerk at a Huck's convenience store. The two trials were severed. Following a jury trial, defendant was found guilty, and in January 1995, defendant was sentenced to natural life in prison without parole. Defendant appeals his conviction and his sentence. We affirm.

The codefendant, Tyrone Humphrey, lived with Tosha Krause at 835 East Whitmer, in Decatur. Tosha testified that defendant and Humphrey borrowed her 1979 Oldsmobile Cutlass during the evening hours of September 5. Her car had a loud muffler at the time. The two were gone about 45 minutes before returning the car. Richard Jackson, who lived near the Huck's store, testified that on September 5, about 11:30 p.m., he heard "a loud noise like a car drive, a couple doors slam." He looked out his window and saw a car parked on the curb directly in front of his house. After watching for 10 or 15 minutes, Jackson saw two people running from the direction of Huck's, carrying a lightweight bag. They drove off quickly and did not turn the car's lights on until it reached the corner. The car had a loud muffler. Jackson testified that a photograph of the Krause 1979 Cutlass closely resembled the car he saw September 5.

Decatur police officer Roger Ryan testified he recovered four empty .380 Winchester shell casings at the Huck's scene, as well as a spent bullet and a bullet fragment. In the back storeroom Ryan observed that the metal case which housed the surveillance video cassette recorder (VCR) was broken, and the VCR had been removed. There were VHS tapes for each day of the week, but the tape labelled "Monday" was missing. (September 5, 1994, was a Monday.)

Larry Joe Krause testified that on September 5 he was living with his sister Tosha at 835 East Whitmer. After defendant and Humphrey borrowed the 1979 Cutlass, they returned between midnight and 1 a.m. on September 6, while Krause was watching television. Defendant was carrying what appeared to be a VCR in his hands. Defendant told Krause the two had robbed Huck's and taken a VCR. The next morning defendant asked Krause if he knew anybody who wanted to buy a VCR. Krause and defendant were watching the television news at 10 p.m., September 6, when the story about the Huck's robbery aired. Krause looked at defendant and said, " 'It wasn't you all, was it?' " The defendant answered, " 'Yeah.' "

Antonio Gray testified that he was incarcerated in the Macon County jail while defendant was incarcerated there, and defendant had spoken to him on three different occasions regarding the murder.

Defendant told Gray that he and his cousin Humphrey had robbed the Huck's store. Defendant took $30 from the clerk, then shot her. Defendant then went to the storeroom and removed the VCR. As he left the store, defendant shot the clerk two more times. Gray asked why defendant shot the clerk, since he was wearing a mask and she could not see his face. Defendant responded that he could not stop because it felt so good to him. Defendant told Gray what he did with the VCR—he "crunched it up real good and threw it on a roof or something."

Officer Ryan testified that he recovered a VHS tape and pieces of a VCR from the roof of a house at 843 East Whitmer on September 7. The VHS tape bore the label "Monday." Another witness testified that the serial number on the recovered VCR matched the serial number of the VCR that had been installed in the Huck's store in 1993. Ryan recovered two latent prints from the VCR pieces seized on the roof. Those prints matched the defendant's prints. Another print matched a fingerprint of Humphrey.

There was more to the testimony of Gray and Krause. Gray testified defendant told him that defendant and Humphrey on one occasion got into a car with "two white guys driving." Humphrey pulled a gun and robbed the men, then took them someplace and proceeded to shoot them. Defendant told Gray the gun was well hidden. Krause testified that sometime after June 29, 1994, defendant told him "two white guys picked them up and took them; took them for a ride, and they took them out of the car and killed them and took the car and left." On another occasion defendant told Krause that "we" had robbed Ali's Market. The State introduced evidence that two white men, Shane Storm and Cary Matthew Whitacre, were killed near Lake Decatur on August 10, 1994, and that five .380 Winchester shell casings were recovered from the area immediately around the two bodies. Massound Aliabadi testified that he owned Ali's Market in Decatur, and that on July 29, 1994, three black males robbed his store. Aliabadi was shot several times during the robbery. Five .380 Winchester shell casings and two spent bullets were recovered from the scene. Krail Lattig, an expert witness on firearms and ammunition, testified that he compared the shell casings from the Huck's, Storm-Whitacre, and Ali's Market crime scenes and determined that a single gun fired all of the cartridges. He also compared the spent bullets recovered from each of the crime scenes and determined that a single gun fired each of the bullets. The gun was never recovered.

The trial court admonished the jury that the evidence of other crimes was being admitted only "on the issue of the defendant's preparation, plan, identity of a weapon, and identity of the defendant."

Defendant and Humphrey were later convicted of the murders of Whitacre and Storm. See *People v. Humphrey*, 281 Ill. App. 3d 1148 (1996) (unpublished order under Supreme Court Rule 23) (affirming conviction); *People v. Williams*, 283 Ill. App. 3d 1128 (1996) (unpublished order under Supreme Court Rule 23) (affirming conviction). Defendant was convicted in the Ali's Market incident in May 1995.

Defendant testified that he visited his aunt on September 5, arriving about 9:45 p.m. and leaving about 2 or 3 a.m. He denied going to the Huck's store, denied killing Sheri Ellis, and testified he had no knowledge of the robbery or homicide. Defendant testified that a black male at Longview Apartments, a person he did not know, sold him a VCR for $15 on September 6. Defendant did not know how to hook up the VCR, so he threw it in the backyard at his girlfriend's house. Defendant testified he had no knowledge of the Storm-Whitacre homicides or the Ali's Market robbery. He testified Gray's testimony regarding his alleged admissions was not true. Defendant denied making any of the statements that Krause attributed to him regarding the Storm-Whitacre, Ali's Market, or Huck's incident.

# I

■ Defendant first argues the trial court erred in admitting evidence of his participation in the other crimes. Evidence of other offenses is admissible if relevant for any purpose other than to show propensity to commit a crime. *People v. Jones*, 156 Ill. 2d 225, 239, 620 N.E.2d 325, 330 (1993). It is not necessary that the evidence fit into a specific enumerated exception in order for the evidence to be admissible. *People v. Stewart*, 105 Ill. 2d 22, 61-62, 473 N.E.2d 840, 859-60 (1984). It is only necessary that there be some clear connection between the other crime and the crime charged which creates a logical inference that if defendant committed the other crime, he committed the crime charged. *People v. Overlin*, 241 Ill. App. 3d 530, 539, 608 N.E.2d 925, 930 (1993); *People v. Kimbrough*, 138 Ill. App. 3d 481, 486-87, 485 N.E.2d 1292, 1297 (1985).

The fact that there is a link between a number of crimes does not necessarily mean that they are admissible, even if there is clear evidence that defendant committed each of the crimes. There will be evidence that defendant committed each of the crimes even when the only purpose for admission is to show a propensity to commit crime. *People v. Biggers*, 273 Ill. App. 3d 116, 123, 652 N.E.2d 474, 479 (1995). In the present case, if the only evidence was the ballistics evidence that the same gun was used in each crime, it would appear that the evidence of other crimes should not have been admitted. There would

be no logical inference that if defendant was involved in the Storm-Whitacre murders, or the Ali's Market robbery and shooting, that he committed the Huck's store murder. Proof of three murders instead of one would be justified only by the desire to show defendant's propensity to commit crime. The other murders did not facilitate the commission of the Huck's murder. This is not a case like *People v. Cole*, 29 Ill. 2d 501, 505, 194 N.E.2d 269, 271 (1963), where evidence of prior narcotics transactions was admitted because it explained the ease with which the purchase was made. "There the prior events facilitated the otherwise implausibly simple controlled sale—the crime charged." *People v. Romero*, 66 Ill. 2d 325, 331, 362 N.E.2d 288, 290 (1977).

It may be easier to justify introduction of evidence of the Huck's murder in the Storm-Whitacre case, or the Ali's Market case, than vice versa. In Storm-Whitacre, for example, it could be shown (1) the weapon used was the same weapon used in the Huck's murder; (2) there is strong evidence defendant committed the Huck's murder (fingerprints on the VCR); and (3) accordingly, there is a logical inference that defendant was involved in the Storm-Whitacre murders. The syllogism does not work the other way around. There is no such logical inference that if defendant committed the Storm-Whitacre murders he committed the Huck's murder.

What is important in this case are the admissions to Gray and Krause. In *People v. Tellez*, 235 Ill. App. 3d 542, 601 N.E.2d 1284 (1992), defendant (a policeman) admitted to John Branco (who had connections to organized crime) that he had committed the charged murder in 1986, and another murder in 1984. At trial defendant testified he fabricated those admissions as part of a private undercover investigation he was conducting. There was strong evidence defendant committed the 1984 murder, however, and the court admitted that evidence to refute defendant's claim of fabrication. *Tellez*, 235 Ill. App. 3d at 555, 601 N.E.2d at 1292. In *People v. King*, 109 Ill. 2d 514, 488 N.E.2d 949 (1986), defendant confessed to the police that he committed an armed robbery on December 22, and the charged armed robbery and murder at a nearby location on December 19. Bullets found at each location were fired from the same gun. A gun was produced which defendant identified as the murder weapon. At trial defendant testified the police had coerced him into making an untrue confession. Defendant sought to exclude evidence of the December 22 armed robbery, but the evidence was admitted. "Evidence regarding the [December 22] Church's Chicken robbery was relevant to establish the accuracy of the confession." *King*, 109 Ill. 2d at 531, 488 N.E.2d at 958. "The evidence of the other crime tended to

corroborate the defendant's statements in his confession concerning the two offenses, his role in each, and the weapon." *King*, 109 Ill. 2d at 531, 488 N.E.2d at 958.

That is not to say that, simply because a witness may be more believable when he testifies to defendant's admission of three crimes than when he testifies to defendant's admission of one crime, that testimony will always come in as "corroboration." Evidence of other crimes is not admissible simply to enhance the credibility of the State's key witness who testifies those crimes have been committed. *Romero*, 66 Ill. 2d at 330-31, 362 N.E.2d at 290. The evidence of defendant's commission of the other crime was not very strong in *Romero*.

■ In the present case, unlike *Tellez* and *King*, defendant does not admit he made the statements and then attempt to explain them. In the present case defendant denies he made the statements at all. In the present case the only issue is whether Gray and Krause are telling the truth. Looking at it from defendant's point of view, are Gray and Krause more believable because they told a big lie (admitted three murders and a shooting) than if they told a smaller one (admitted just this murder)? There is no issue here such as whether defendant intentionally falsified the statements because he was doing undercover work or because he was coerced into making a false statement. It could be argued the evidence of other crimes in this case came in only to enhance the credibility of Gray and Krause. There is more, however, to this case. When Gray and Krause first disclosed what defendant had told them, they were unaware there was evidence linking the Huck's store murder, the Storm-Whitacre murders, and the Ali's Market robbery and shooting. The things defendant told them about the three crimes would only have been known by someone who had knowledge of those crimes. The other-crimes evidence in this case was important evidence which established that defendant made the admissions to Gray and Krause. See *King*, 109 Ill. 2d at 531, 488 N.E.2d at 958. There was no error in admitting the evidence of other crimes.

■ The trial court's limiting instruction advised the jury that the other-crimes evidence was admitted, first of all, only on the issue of the defendant's "preparation" and "plan." Evidence of other crimes may be admitted where all the crimes are part of a common design or plan, as where the defendant steals a car to use in a bank robbery. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 404.5, at 192, 194 (5th ed. 1990). We do not see preparation or plan as justifying admission of the evidence here. The trial court also saw the evidence as admissible on the issue of "identity of a weapon." In

*Stewart*, the murder weapon found in defendant's apartment was registered to Cornelius Jones. Jones was allowed to testify the weapon was taken from him in an armed robbery the year before, and the robber fled in a Buick Electra, which looked like one owned by the defendant. In the present case, however, no weapon was ever found. The three crimes were committed with the same weapon, but there was no evidence tying defendant to any weapon. We do not see that the evidence of other crimes was admissible here because it somehow showed identity of a weapon. See also *King*, 109 Ill. 2d 514, 488 N.E.2d 949 (defendant identified gun as weapon he used in two crimes, then claimed he was coerced into a false confession). The last reason given by the trial court for admission of the other crimes was on the issue of "identity of defendant." As discussed above, we believe the evidence of the other crimes, when coupled with defendant's admissions to Gray and Krause, did tend to establish defendant's identity as the perpetrator of the Huck's murder.

■ Defendant argues the *modus operandi* exception arises most often when the identity of the perpetrator is at issue (*People v. Denny*, 241 Ill. App. 3d 345, 358, 608 N.E.2d 1313, 1322 (1993)), and the *modus operandi* exception does not apply in this case. "*Modus operandi*" refers to a pattern of criminal behavior so distinctive that separate crimes are recognized as the handiwork of the same wrongdoer. *Modus operandi* requires a high degree of similarity between the facts of the crime charged and the other offense. *People v. Cruz*, 162 Ill. 2d 314, 348-49, 643 N.E.2d 636, 653 (1994). We agree the facts of the three crimes here would not support application of the *modus operandi* exception, but we disagree that the *modus operandi* exception is the only way to show identity of the defendant. Again, there are two questions here: (1) are the several crimes connected? and (2) is there a logical inference that if defendant committed one crime he logically committed the other? *Modus operandi* goes to the first factor, whether the several crimes are connected. There are other ways to show a connection. "In some cases there are definite distinctive links between the two cases." *Biggers*, 273 Ill. App. 3d at 123, 652 N.E.2d at 479. It is clear in this case that the Huck's murder, Storm-Whitacre murders, and Ali's Market shooting are connected. There is clear ballistics evidence that the same gun was used in each crime. It is irrelevant that the *modus operandi* was different with each crime.

## II

Defendant next argues that the State's failure, which all parties agree was unintentional, to disclose Krause's prior convictions was error requiring reversal. The State failed to disclose that Krause had

three misdemeanor theft convictions, a felony conviction for theft over $300, and two subsequent felony convictions for theft with a prior felony conviction. The trial court, in ruling on defendant's motion for new trial, concluded there was error but that it would not have affected the outcome of this case.

■ A prosecutor violates the due process rights of the accused when the State, notwithstanding a specific defense request for production of evidence, fails to disclose evidence that is material to the suspect's guilt or innocence. *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). Evidence is "material," for purposes of *Brady*, when it would tend to raise a reasonable doubt of defendant's guilt—when it is reasonably likely that it would have affected the outcome of the case. *People v. Sims*, 167 Ill. 2d 483, 507, 658 N.E.2d 413, 424 (1995). The question is whether the government's evidentiary suppression " 'undermines confidence in the outcome of the trial.' " *Kyles v. Whitley*, 514 U.S. 419, 434, 131 L. Ed. 2d 490, 506, 115 S. Ct. 1555, 1566 (1995), quoting *United States v. Bagley*, 473 U.S. 667, 678, 87 L. Ed. 2d 481, 491, 105 S. Ct. 3375, 3381 (1985).

■ We agree with the trial court that it is not reasonably likely the failure to disclose the convictions would have affected the outcome of this case and that confidence has not been undermined in the outcome of this trial. Much of what Krause testified to was supported by other evidence. Defendant's use of the 1979 Cutlass on September 5 was confirmed by Tosha and other witnesses. Defendant's fingerprints were on the VCR taken from the Huck's store. Defendant admitted his participation in the other crimes to Gray as well as to Krause, and there was ballistics evidence which supported defendant's admission to Krause that the three crimes were connected.

### III

■ Defendant argues the State was erroneously allowed to corroborate the testimony of Krause with Krause's prior consistent statements. On cross-examination, the prosecutor asked Krause whether, when he spoke to the police on September 7, he told them what he testified to before the jury, to which Krause responded in the affirmative. At trial the defense sought to establish that Krause had two motives to falsify his testimony: (1) he wanted to help his sister, Tosha, who had originally denied loaning her car to defendant and had been charged with obstruction of justice; and (2) he wanted to avoid being charged with "fencing," as he had allegedly told defendant he would try to sell the VCR defendant took from Huck's.

Generally, proof of a prior consistent statement by a witness is admissible to rebut a charge or inference of recent fabrication or mo-

tive to testify falsely, as long as the prior statement is made before the alleged motive to fabricate existed. *People v. Ashford*, 121 Ill. 2d 55, 71, 520 N.E.2d 332, 338 (1988). Krause and Tosha were taken to the police station at the same time on September 7 and interviewed separately. Krause had no knowledge Tosha had obstructed justice when he gave his statement to the police, and she was not charged with obstruction of justice until September 8. The trial court properly admitted the prior consistent statement to rebut the inference of recent fabrication. In any event, the statement was not extensive, was only cumulative, and its admission could not have been prejudicial.

## IV

■ Finally, defendant argues that the trial court improperly determined that this murder "was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (730 ILCS 5/5—8—1(a)(1)(b) (West 1994)) and sentenced him to a term of natural life imprisonment on that basis. The State argues that defendant has waived this issue by failing to object to his sentence in the trial court or by failing to file a post-trial motion to reduce his sentence. In *People v. Lewis*, 158 Ill. 2d 386, 634 N.E.2d 717 (1994), the supreme court ruled that the filing of a post-trial motion to contest sentencing issues was permissive and not mandatory pursuant to section 5—8—1(c) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(c)). *Lewis*, 158 Ill. 2d at 389, 634 N.E.2d at 719, citing *People v. Turner*, 233 Ill. App. 3d 449, 456, 599 N.E.2d 104, 109-10 (1992). Section 5—8—1(c) of the Code was since amended to read as follows:

> "A motion to reduce a sentence may be made, or the court may reduce a sentence without motion, within 30 days after the sentence is imposed. *A defendant's challenge to the correctness of a sentence or to any aspect of the sentencing hearing shall be made by a written motion filed within 30 days following the imposition of sentence.*" (Emphasis denotes language added.) 730 ILCS 5/5—8—1(c) (West 1994) (as amended by Pub. Act 88—311, § 15, eff. August 11, 1993 (1993 Ill. Laws 2604, 2615)).

Although there is some dispute, we believe the amendment did not change the rule set out in *Lewis*. *People v. Cook*, 279 Ill. App. 3d 718, 725-26, 665 N.E.2d 299, 303-04 (1995); *cf. People v. McCleary*, 278 Ill. App. 3d 498, 501, 663 N.E.2d 22, 24 (1996); see *People v. Porter*, 285 Ill. App. 3d 50, 52 (1996). The same language that the supreme court interpreted in *Lewis* is still present in the statute. The amendment only provides that if a motion is filed it must be in writing and filed within 30 days. *Cook*, 279 Ill. App. 3d at 726, 665 N.E.2d at 304. Post-trial motions are essential in jury trials in order to give the trial

court an opportunity to rule on the claimed error. They are not so useful in cases like this, where it was the trial court that imposed the sentence and the post-trial motion would only repeat arguments the trial court had already heard and rejected.

In *People v. Andrews*, 132 Ill. 2d 451, 548 N.E.2d 1025 (1989), a robbery victim was killed in his car with a single shot to the head. The trial court found that the murder was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" (Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b)(2)), because the murder was senseless and unresisted. The supreme court reversed, saying that all murders are brutal and heinous to a certain degree, but that the legislature did not intend to convert every offense into an extraordinary offense subject to an extended-term sentence. In the present case, however, defendant shot the victim not once but four times, all to the head and neck area. See *People v. Keller*, 267 Ill. App. 3d 602, 641 N.E.2d 891 (1994) (extended sentence where victim shot six times). The victim here was shot twice, a period of time elapsed, and then the victim was shot twice more for no apparent reason. The victim was still alive when the second shooting occurred. Defendant's statements to Gray, and other statements considered by the trial court during the sentencing hearing, show a callous attitude and lack of remorse not found in *Andrews*. The trial court acted within its discretion in imposing an extended sentence.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

McCULLOUGH and GARMAN, JJ., concur.